801 So.2d 1097 (2001)
Elton J. MYERS, Sr.
v.
Hazel DRONET, et al.
No. 01-5.
Court of Appeal of Louisiana, Third Circuit.
June 22, 2001.
*1100 H. David Vaughan, II, Plauche, Smith, & Nieset, Lake Charles, LA, Counsel for Defendant/Appellee, State Farm Fire and Casualty Co., Hazel Dronet.
J.B. Jones, III, Jones Law Firm, Cameron, LA, Counsel for Plaintiff/Appellant, Elton J. Myers, Sr.
Court composed of BILLIE COLOMBARO WOODARD, MARC T. AMY, and ELIZABETH A. PICKETT, Judges.
WOODARD, Judge.
In the instant litigation, Mr. Elton Myers, Sr. asserts that Ms. Hazel Dronet acted negligently when she failed to properly maintain an electric hand-held grinder, which allegedly injured his right eye. The issue is whether the trial court erred when it found that she did not owe him a duty and, consequently, granted her motion for summary judgment.
In order to adequately analyze Mr. Myers' cause of action, we must examine *1101 the framework for the newly enacted La. Civ.Code art. 2317.1. We find that this Article implements a cause of action based on negligence and therefore is, applicable to the facts sub judice.
After conducting a de novo review of the record, we affirm the trial court's motion for summary judgment as Ms. Dronet did not owe Mr. Myers a duty.

* * * * *
Ms. Dronet hired Mr. Myers on a part-time basis to perform yard work on her property. The instant litigation ensued after he claimed that he sustained injuries while working on her rental property. He asserts that a metal sliver flew into his right eye as he attempted to sharpen a shovel's blade with Ms. Dronet's hand-held electric grinder. He states that he found the grinder's disk to be worn around the edges. Because of his injury, he underwent eye surgery and claims to suffer from a right eye vision impairment.
Alleging that Ms. Dronet's negligence, at the least, contributed to his injury, he filed the instant litigation, naming her and State Farm Fire and Casualty Company (State Farm), her homeowner insurer, as Defendants. Specifically, he advances that Ms. Dronet failed to properly maintain the shovel and the grinder, which she supplied to complete his work. Subsequently, Ms. Dronet and State Farm filed a motion for summary judgment, which the trial court granted, finding that Ms. Dronet did not owe Mr. Myers any duty, as a matter of law. Mr. Myers appeals.

* * * * *
The main issue, which we are asked to determine, is whether the trial court erred when it granted Ms. Dronet's motion for summary judgment. In effect, this requires that we, ascertain first, which liability theory applies, before determining whether Mr. Myers met his threshold for proof.
The trial court dismissed his claim via summary judgment. On appeal, we review summary judgments, de novo, under the same criteria that governed the trial court's consideration of whether summary judgment was appropriate.[1] Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966 charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains to be decided.[3] Once the mover makes a prima facie showing that there is no genuine issue concerning a material fact and that summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his *1102 pleadings, but his response, by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In summary, the threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains.[5] After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Thus, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9]

WORKERS' COMPENSATION
Mr. Myers allegedly sustained an injury while in the course and scope of his employment with Ms. Dronet. At first glance, our workers' compensation laws appear to preempt his action. However, the record reveals that she hired him to perform yard work on her private residence. Under this circumstance, La.R.S. 23:1035 "exempt[s] from coverage ... all labor, work, or services performed by any employee of a private residential householder in connection with the private residential premises of such householder[.]" Nevertheless, Section 1035 provides that "any person who is engaged in the trade, business, or occupation of furnishing labor, work, or services to private residential premises ... shall be liable under the provisions of this Chapter[.]" Accordingly, under these circumstances, sub judice, to invoke a right of action under our workers' compensation laws, Mr. Myers had to show that he sustained an injury while engaged in an activity furthering one of Ms. Dronet's businesses.[10]
The record shows that he was injured while working on her rental property. However, it does not contain any evidence suggesting that his work was part of her regular business activity.
Accordingly, we do not find any facts in the record, permitting us to conclude that our workers compensation laws pre-empt Mr. Myers' cause of action.

APPLICABLE DELICTUAL LAWS
Delictual laws are the Louisiana equivalent of the common law tort concept.
Mr. Myers framed his tort action as negligence. Preliminarily, to avoid summary judgment, when asserting a cause of action based on negligence, a plaintiff bears the burden of setting forth a prima facie case, alleging, at least, that there are disputed issues of material facts, pertaining to each of the claim's elements.[11] Accordingly, the general scope of *1103 our appellate focus is whether Mr. Myers successfully did so. Nevertheless, before embarking into a detailed factual analysis, we must identify which applicable codal provisions will dictate our decision.
Thus, we thoroughly examine the negligence notion, tracking its pertinent codal development and application. Given legislative changes to Louisiana Civil Code Article 2317, which, traditionally, has been thought of as a strict liability article, we, also, consider the impact of the 1996 Act, as it specifically relates to Article 2317.1.
Mr. Myers asserts that Ms. Dronet acted negligently when she failed to properly maintain her grinder. His claim does not rest upon a particular civil code article but is simply grounded in Louisiana's negligence laws.
Generally, negligence refers to a defendant's conduct, which falls below a legal standard established to protect others against unreasonable risks of harm.[12] This standard is based on a defendant choosing the reasonable alternative available when the harm occurredthe reasonable man standard.[13]
One of Louisiana's prominent legal scholars, Professor Ferdinand F. Stone, explained that the Louisiana concept of negligence is deeply rooted in Roman law.[14] He opined that the touchstone of negligence is based on the concept of duty and whether it may have been breached. When duty is not codified into positive law, he explains, it is generally phrased as due care under the circumstances; i.e., under Roman and French law, duty would be analyzed in terms of what a "good family father" ("bonus pater familias" and "bon pere de famille," respectively) would do under the circumstances. He noted, however, that the common law appreciation of duty translates into what an average reasonable person would do; where in Louisiana, it is analyzed as what a prudent administrator would do. Professor Stone's view of negligence is based on three Rs: RelationshipRiskReason, which he opined required a four-prong test: (1) relationship between the parties; (2) risks involved in their transaction; (3) given both (1) and (2), that a reasonable prudent person would act the same way under the circumstances; and (4) that the defendant's conduct falls below the standard set forth in (3).
Whatever concept may be used to determine whether a person acted negligently, the appropriate standard of care applicable to each particular harm requires evaluating the facts specific to each case. However, reducing negligence to simple, definite rules often seems to be a vain exercise.
A delictual action in our civil code begins with La.Civ.Code art. 2315: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[15] The articles which follow Article 2315 chisel its general tenet into various forms, such as negligence, strict liability, or absolute liability.

NEGLIGENCE UNDER LA.CIV.CODE ART. 2316
Article 2316 provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." In effect, it supplies a *1104 general concept of negligence.[16] In applying it to claims, our jurisprudence requires that a plaintiff meet a five-prong test: (1) the delictual conduct was the cause-in-fact of the damage or injury; (2) the defendant owed the plaintiff a duty under the specific circumstances of the particular case; (3) the particular defendant breached the duty which s/he owed the particular plaintiff; (4) the risk and resulting harm stood within the scope of protection of the defendant's duty; and (5) the plaintiff showed actual damage.[17]
Although a cause of action, based on La.Civ.Code 2316's traditional concept of negligence, may lead to complex and, sometimes, nebulous analysis, the applicable inquiries and parameters, which our jurisprudence has fashioned concerning it, are well defined.
NEGLIGENCE UNDER LA.CIV.CODE ART. 2317.1
A similarly well-defined strict liability concept has been codified by La.Civ.Code art. 2317, among other articles. It is directly rooted in the French Civil Code, specifically, C. Civ. 1384(1).[18]
In Loescher,[19] the Louisiana Supreme Court explained Article 2317 strict liability and fault:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
(Emphasis added.)
This changed in 1996, when our legislature overhauled our delictual laws (1996 Acts),[20] eliminating, for the most part, the Loescher strict liability concept, while enlarging the scope of negligence-based liability. Until the 1996 Acts, our jurisprudence treated La.Civ.Code art. 2317, providing for "[a]cts of others and of things in our custody," as a strict-liability article.[21] This change is particularly relevant to the instant litigation, which involves liability of a person having custody *1105 of a "thing" which caused harm to another. Indeed, in Loescher,[22] the Louisiana Supreme Court used Article 2317 to hold a person, who had custody over a thing, liable for the damages it may have caused, even though the owner neither knew nor should have known of any problems pertaining to the thing.
Essentially, under Article 2317, a plaintiff had to show injury from an object, which possessed a vice or defect, creating an unreasonable risk of harm and which was in the defendant's custody. These requirements were not completely foreign to those which a negligence analysis imposed. In fact, our well-settled jurisprudence applied the same basic principles to both types of actions.
The operative difference between a negligence and strict liability cause of action is that:
In a negligence suit, the defendant's awareness of a defective condition which [sic] gives rise to a duty to act. However, in a strict liability suit, the defendant's legal relationship with the defective property gives rise to that duty.[23]
(Emphasis added.) Accordingly, a defendant could have been liable because of her/his mere relationship with the thing; her/his lack of knowledge would not provide a valid defense.[24]
However, in the 1996 Acts, our Louisiana legislature chose to depart from the traditional French Civil Code strict liability concept. These changes are considered to be the "most significant legislative changes to Louisiana tort law in the state's history."[25] The legislature did not amend Article 2317, which still provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Instead, it appended a new article to itLa.Civ.Code art. 2317.1, which states, in part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
(Emphasis added.)
Article 2317.1 changed the Loescher strict liability by infusing "actual or constructive knowledge" and traditional negligence terminology"reasonable care" into Article 2317, Therefore, in effect, the 1996 amendments overruled Loescher and its progeny, replacing its strict liability concept with a negligence-based rule.[26]
After conducting a thorough review of our current Louisiana jurisprudence, we find that our Louisiana courts have, yet, to determine the extent of the requirements which Article 2317.1 imposes. This issue appears res nova, possibly, because Article 2317.1, a substantive law, did not apply retroactively to causes of *1106 actions arising before its enactment.[27] To date, some courts have merely stated that "[t]he addition of knowledge as an element has effectively terminated strict liability in most circumstances."[28] Indeed, we agree. However, going further, we find that Article 2317.1 provides for notions including "reasonable care," breach of duty, and actual and constructive knowledgeelements traditionally employed in negligence. Accordingly, in view of our jurisprudence and doctrine,[29] we are convinced that, although La.Civ. Code art. 2317 has been traditionally framed as a strict liability article, with 2317.1's advent, 2317, in effect, actually implements a cause of action based on negligence principles.
Nevertheless, although sounding in negligence, Article 2317.1 retains some pre 1996 Acts' components; i.e., some of Article 2317's framework still remains.[30] We find this to be so, since our legislature did not repeal or rewrite Article 2317, but instead, chose to append Article 2317.1, a new article, to it. Accordingly, when analyzing liability under Article 2317.1, we must still include Article 2317's requirements.[31]
Further, having added the actual/constructive knowledge and "reasonable care" terminology, the legislature also incorporated the structure and jurisprudence traditionally intended for negligence under Article 2316 into Article 2317.1. Therefore, "proof of an owner's or custodian's liability for damages caused by a thing is determined under 2317.1 but in conjunction with articles 2315, 2316, and 2317."[32] In other words, applying Article 2317.1, requires considering the relevant jurisprudence which Articles 2316 and 2317 trigger.
Consequently, reading Article 2317.1, together with Articles 2317 and 2316, we find that a plaintiff has the following proof threshold:
(1) "Owner" or "custodian" of a "thing."
(2) "Ruin," "vice," or "defect" of a thing.
(3) Cause-in-fact.
(4) Duty
(5) Breach
(6) Duty Risk analysis
(7) Damages.
Nevertheless, even this does not address all of the necessary questions, as Joseph E. Lee, III[33] crystalizes:
Clearly, the intent behind the enactment of Article 2317.1 was to impose a negligence standard where there was once strict liability. And certainly, most of the above elements of the prima facie case under Article 2317.1 have been widely dealt with by the courts in other contexts. However, the intent to move from a strict liability to a negligence standard does not in itself answer all questions or solve all problems.
Specifically, what standards should apply to determine whether the plaintiff has made a sufficient showing as to *1107 whether the defendant "knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect" that injured the plaintiff? The problem for the former strict liability plaintiff in an Article 2317.1 action is thus to determine how to go about proving that the defendant-owner/custodian had either actual or constructive knowledge of the defect that caused the plaintiffs damages.
Furthermore, while it seems clear that the Legislature hoped to replace Article 2317 strict liability with a more defendant-friendly negligence standard, did it succeed in doing so? That is, does the plain wording of Article 2317.1 lend itself to a negligence interpretation or to some other method of analysis?
While these distinctions may seem to be subtle at best, the importance of settling these questions should not be underestimated. It is worthwhile to recall that, in a negligence action, the plaintiff bears the burden of making a prima facie showing on each element of his claim if he wants to avoid summary judgment. If a plaintiff fails to offer proof that the owner of a thing knew, or in the exercise of reasonable care should have known of the defect that caused his damage, he presumably will be thrown out of court. Determining just what sort of proof will be required in an Article 2317.1 action will be crucial for those hoping to recover.
(Footnotes omitted.)
Accordingly, we define, with more particularity, the indicators which Article 2317.1 dictates for proving one's case.

Ownership or Custody of a Thing
Initially, the plaintiff must show that the defendant possessed ownership or custody of the damage-causing thing. Our jurisprudence has well defined custody under Article 2317.[34] However, Article 2317.1 apparently enlarged Article 2317's scope when it also included ownership of the thing.

"Ruin," "Vice," or "Defect"
"Defect" has been interpreted as "[a] flaw or fault or condition of relative permanence existing or inherent in the thing itself as one of its qualities."[35] For example, in Loescher,[36] the court found it to be applicable to a fallen tree. Similarly, "ruin" has been defined as "a building, a person, or other object that has tumbled down or fallen into decay."[37] Finally, "vice," which is thought to be synonymous with "defect," is defined as "a physical imperfection, deformity or taint."[38]
Generally, Article 2317.1 employs these words to describe a specific thing's unreasonably dangerous character.[39]

Cause in Fact
Referring to "cause-in-fact" as generally understood in our state, Article 2317.1 provides that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect" and that "the damage could have been prevented by the exercise of reasonable care." (Emphasis added.)
*1108 Under the traditional cause-in-fact jurisprudence, our courts have usually employed, either, the "but for," or the "substantial factor" inquiries. In Dixie Drive It Yourself System v. American Beverage Co.,[40] our Louisiana Supreme Court stated that "[n]egligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm." Since Dixie Drive It Yourself, our courts have applied both the "but for" and "substantial factor" tests, alternately and in combination, to determine cause-in-fact.[41] In Article 2317.1's context, to establish cause-in-fact, the plaintiff must show that he would not have suffered damages "but for" the thing's ruin, vice, or defect or that such ruin, vice, or defect applied as a "substantial factor" in bringing about the damage.

Duty
Article 2317.1's "[k]new or, in the exercise of reasonable care, should have known" language signifies "duty" in the negligence context.
In Dobson v. Louisiana Power & Light Co.,[42] our Louisiana Supreme Court defined negligence as "conduct which falls below the standard established by law for protection of others against an unreasonable risk of harm." Article 2317.1 establishes the legal standard to which Dobson referred when requiring that a plaintiff show that the defendant "knew or, in the exercise of reasonable care, should have known" of the ruin, vice, or defect which caused the damage; that the damage could have been prevented by the exercise of reasonable care; and that he failed to exercise such reasonable care.
In effect, a close reading of Article 2317.1 reveals that it imposes a two-prong duty upon the owner or custodian of a thinga duty to identify the risks which the thing caused and a duty to exercise reasonable care in preventing damages.
First, "knew or, in the exercise of reasonable care, should have known," otherwise, referred to as actual or constructive knowledge, imposes, upon the owner or custodian, a duty to exercise reasonable care in discovering ruin, vice, or defect. This is a duty to identify that the thing creates a risk of harm to another, if a reasonable person would recognize such a risk when using the type of attention, perception of the circumstances, memory, intelligence, and judgment proper to a reasonable person.[43] Proof that the ruin, vice, or defect has existed for a period of time to reasonably permit its discovery is sufficient to show constructive knowledge.[44] This very requirement may be considered as having abolished the Loescher strict liability concept, because under it, the owner has an absolute duty to discover the risks that the thing in custody presents.[45]
The second prong of the duty imposed requires that the thing's owner or custodian exercise reasonable care in preventing damages which the thing may cause others. The care required largely *1109 depends upon the degree of likelihood that injury may occur.[46]
Finally, when determining whether to assign a duty to a person, our analysis is fact specific.[47] Nevertheless, the issue of whether there is a duty is ultimately one of law.[48]

Breach of Duty
Article 2317.1 requires that the owner or custodian "failed to exercise such reasonable care[,]" or stated otherwise, breached her/his duty to exercise reasonable care. To determine whether s/he breached a duty or, in other words, acted unreasonably, courts often use Judge Hand's Carroll Towing[49] balancing test, most commonly referred to as the "Hand formula," the "Learned Hand test," or the "risk-benefit balancing test."[50] Under the Learned Hand test, three factors prescribe the amount of caution which a particular occurrence requires a person to take: (1) the likelihood that the thing will injure others; (2) the seriousness of the injury if it occurs; and (3) the risk of harm balanced against the interest, which the person may sacrifice or the cost of the precaution which that person must undertake to avoid the risk.[51]
In Levi,[52] the Louisiana Supreme Court elaborated on each of the Learned Hand test's requirements, as follows:
The amount of caution tends to increase with the first factorthe likelihood that the actor's conduct will injure others. Other things being equal, the amount of care required will vary directly with the degree of likelihood of injury.
The amount of caution required also tends to increase with the second factor the seriousness of the injury if it happens. If the harm that may be foreseen is great, conduct that threatens it may be negligent even though the statistical possibility of its happening is very slight.
The third variable factorthe interest the defendant must sacrifice or the burden he must assume in order to avoid the riskworks in the opposite direction and may sometimes be entitled to enough weight to prevent conduct from being negligent even where it involves virtual certainty of very great harm. The interest that must be sacrificed or the burden that must be assumed to avoid the risk is balanced against the danger. At this point there is the greatest need for careful analysis so as to focus attention on the precise interest that would be sacrificed, or the precise burden that would be assumed, and this in turn will depend on precisely what act or omission is challenged as negligent. The interest whose sacrifice is in question on the issue of negligence is the value of the particular act or omission that is challenged as negligent. Looked at another way, it is the burden of refraining from the particular act or of taking an effective precaution to cover that particular omission. It is not the value of the activity or enterprise as a whole, or the detriment that would flow from its abandonment. Thus, the cost of precautions to avoid a recognizable *1110 risk is relevant, but the law imposes liability for failure to take precautions, even against remote risks, if the costs of the precautions would be relatively low.
(Citations omitted). Ultimately, whether a person breached her/his duty is a question of fact.[53]

Duty Risk-Analysis
Much like the common law legal or proximate cause concepts, Louisiana courts have long adopted a cause-in-fact limiting notion, which is commonly referred to as the "duty-risk analysis."[54] In other words, after it is determined that the defendant has a duty, the analysis requires a determination of whether the duty protects the plaintiff against the particular risk involved. In effect, this inquiry limits a defendant's possible liability to the risks which fall within the imposed duty's ambit. Courts have developed a helpful test for this evaluation, most commonly contained in the talismanic phrase "ease of association." In Roberts,[55] the Louisiana Supreme Court stated:
In determining the limitation to be placed on liability for a defendant's substandard conducti.e., whether there is a duty risk relationshipwe have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Restated, the ease of association inquiry is simply: "How easily does one associate the plaintiff's complained-of harm with the defendant's conduct? ... Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone." Absent an ease of association between the duty breached and the damage sustained, we have found legal fault lacking.
(Citations omitted.) In summary, a person's liability may be affected, only, upon finding an ease of association between her/ his duty and the involved risk of harm.

Damages
The last part of a plaintiff's threshold is to show, by a preponderance of the evidence, the resulting damages from the defendant's fault.[56]

CASE ANALYSIS

PRELIMINARY CONSIDERATIONS
Having found that Article 2317.1 implements a negligence theory of recovery, we now conclude that it also encompasses Mr. Myers' cause of action. Applying 2317.1. to the case sub judice, we note, first, that it is unrebutted that Ms. Dronet owned the electric hand-held grinder. Accordingly, we need not inquire as to its custodian, an inquiry which is Article 2317.1's alternative analysis. Second, it is unrebutted that the grinder was in a state of ruin. Indeed, the record unequivocally reflects that its disk appeared to be eroded on its sides. Third, the evidence also reflects that Mr. Myers' met his 2317.1 threshold of proving that the ruin caused his injury.

DUTY/BREACH
Mr. Myers frames his cause of action as Ms. Dronet's "failure to maintain" the grinder. Under the traditional duty-risk analysis, we are to examine both as individual and unique social actors.[57]
*1111 Although we find some facts in dispute, summary judgment is still appropriate.
Specifically, Ms. Dronet, a retired bank teller and bookkeeper hired Mr. Myers to perform whatever type of work on her property that she would need. However, apparently, they had no arrangements regarding the tools which he was suppose to use. Before Mr. Myers' injury, during their short employment relationship, it is undisputed that he used some of his personal equipment, such as a tiller, as well as some of hers, such as a smaller tiller.
A few days after he started working for her, she requested that he dig a ditch at her rent-house. Apparently, after a rain, stagnant water would remain underneath the house, creating a termite issue. She wanted him to dig a ditch to permit rainwater drainage. However, it is undisputed that she did not instruct him, specifically, on the ditch-building modalities when they met the day before he did the work. He investigated the shovels, which she had in her tool shed. One appeared too small to complete his task; another, an appropriate size, but it needed to be sharpened. According to Mr. Myers, Ms. Dronet told him that he could used a hand-held grinder, which she, also, kept in her shed, to sharpen the shovel. However, he acknowledges that she warned him about the disk's condition and did not instruct him on how to use the grinder.
While Ms. Dronet admits showing her grinder to Mr. Myers, she insists that it was for the sole reason of asking him if it could be repaired, not for him to sharpen her shovel. In fact, she noted that when her shovels needed sharpening, she would have "Cam-tool" do it. She stressed that she kept the grinder, only, because she thought it could eventually be repaired. On the contrary, however, Mr. Myers denies that she ever asked him whether he could repair it.
Additionally, Ms. Dronet stated that she did not use this grinder because she possessed another larger one, in good condition, which her husband used to sharpen his lawnmower blade. Apparently, this larger grinder remained stationary, in full view in her tool shed near a pair of goggles.
Although Ms. Dronet does not admit that she instructed Mr. Myers to use the dull shovel, she concedes that she saw him leave her house with it.
After their discussion, the parties decided that he had to start and complete his task the following morning. It is undisputed that she told him to begin his work, even if she did not appear to be awake. That morning, he went to her house first. When he did not see her, he went inside her tool shed and took the hand-held grinder. He admitted that he noticed that the grinder's disk appeared broken on its side, "kind of crumpled away in places," and conceded that he knew that it might cause some metal slivers to fly away when using it to sharpen the shovel. Notwithstanding, he decided to use it anyway. He did not tell her about his concerns because she was not awake. Mr. Myers also acknowledged that he possessed his own grinder, as well as a new shovel, at his house and that he even thought about going to secure his equipment. However, he could not explain why he did not do so.
Instead, he sharpened the shovel with the hand-held grinder, which took about five minutes. Although he noticed some sparkling, he said that the sparks were flying away from him. He confessed that he had used similar grinders in the past and knew that one should use goggles for safety reasons. However, he asserts that he unsuccessfully looked for some in Ms. Dronet's tool shed.
*1112 After sharpening the shovel, he dug the ditch and did not know that a metal sliver had penetrated his right eye until around bedtime that night.
Obviously, Ms. Dronet and Mr. Myers gave divergent versions of the events, surrounding her hand-held electric grinder. Normally, this would defeat a motion for summary judgment. Nevertheless, in the instant case, either version of the facts leads us to only one conclusion; namely, that the trial court did not err when granting Ms. Dronet's summary judgment. The trial court found that Ms. Dronet owed no duty to Mr. Myers under the circumstances presented. We agree.
It is well-settled that the issue whether there is a duty is one of law for courts to determine.[58] Also, when determining the existence of a duty, as Professor Stone explained, we must analyze the relationships between the parties.[59] In the case sub judice Ms. Dronet appeared to have very little knowledge regarding the use of grinders. She hired Mr. Myers to perform various tasks on her property. Mr. Myers, however, possessed experience in the use of grinders. For example, relying only on Mr. Myers' version of the facts, we note that when he saw the grinder, he immediately noticed that its disk appeared in a state of ruin. He also knew that he should have worn safety goggles to avoid the very type of incident which he sustained. Nevertheless, he chose to use it anyway without using goggles. Thus, it would be ludicrous to hold Ms. Dronet to a duty to warn him of a danger which was self-evident and which he would know better than she.
Therefore, considering the parties' different levels of sophistication, regarding the use of such equipment as a grinder, and accepting Mr. Myers' factual account, we find that, under these circumstances, Ms. Dronet did not owe him any duty. Accordingly, we affirm the trial court's summary judgment.

CONCLUSION
After conducting a de novo review of the record, we find that Ms. Dronet did not owe Mr. Myers a duty under the facts he presented. Accordingly, we affirm the trial court's summary judgment and cast him with costs.
AFFIRMED.
AMY, J., concurs and assigns written reasons.
AMY, J., concurring.
I agree that the motion for summary judgment was properly granted in this case. I write separately to express my view that this case is one that is resolved by consideration of the traditional principles of negligence. Reference to the petition instituting this matter indicates that it is clearly a case instituted under a negligence theory of recovery.
As recently restated by the Louisiana Supreme Court, negligence cases are generally resolved by use of the duty/risk analysis. Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440 (La.3/23/01); 782 So.2d 606. The Court stated:
The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the *1113 defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).
Id. at p. 7; at 611 (citations omitted).
In my view, the submission indicates that the summary judgment was appropriately entered due to the plaintiffs inability to prevail on the fact-intensive scope of the duty/legal cause element. In other words, the plaintiff cannot demonstrate that this defendant failed to act reasonably under this set of circumstances. See Todd v. State through Social Services, 96-3090, p. 6 (La.9/9/97); 699 So.2d 35, 38, wherein Justice Knoll explained that this element "demands an inquiry into whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm." (Emphasis added.)
In this case, it is clear that Mr. Myers was aware that the grinding disk was defective and that, despite this knowledge, he set about to sharpen the shovel. He did so without the use of goggles, despite his awareness that they were required for this type of procedure. I do not conclude that, under these circumstances, Ms. Dronet, an unsophisticated user/owner of the equipment was required to prevent the use of the defective equipment or could have foreseen that Mr. Myers would become aware of the risk and proceed without the appropriate safety equipment. Accordingly, I find that the trial court appropriately granted the motion for summary judgment.
NOTES
[1] Shroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] Id.
[8] Soileau, 702 So.2d 818.
[9] Id.
[10] Breaux v. Hernandez, 96-882 (La.App. 3 Cir. 2/5/97); 689 So.2d 587.
[11] Joseph E. Lee, III, A Return to Negligence or Something More? Proving Knowledge in "Strict Liability" Cases in Louisiana under Civil Code Article 2317.1, 59 La. L.Rev. 1225 (1999).
[12] Id.
[13] Id.
[14] Ferdinand F. Stone, Louisiana Civil Law Treatise: Tort Doctrine, 12 STONE-LA. TORT DOCTRINE (1977).
[15] Loescher v. Parr, 324 So.2d 441 (La.1975).
[16] Id.
[17] Id.; Cornelius v. Wal-Mart, 00-121 (La. App. 3 Cir. 10/25/00); 772 So.2d 816.
[18] Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987).
[19] 324 So.2d at 446-47.
[20] Act No. 1-3, 1-3 WEST LA. SESS. LAW SERV. No. 1 (1996).
[21] Frank L. Maraist & Thomas C. Galligan, Burying Ceasar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 TUL. L.REV. 339 (1996).
[22] 324 So.2d 441.
[23] Blanchard v. State Through Parks & Recreation Comm'n, 97-195 (La.App. 3 Cir. 10/8/97); 702 So.2d 768, 772, writ denied, 97-2831 (La.1/30/98); 709 So.2d 712.
[24] La Coste de Monterville, 502 So.2d 1026.
[25] Maraist & Galligan, 71 TUL.L.REV. 339.
[26] Id.; Lee, 59 LA. L.REV. 1225; Joseph S. Piacun, The Abolition of Strict Liability in Louisiana: A Return to a Fairer Standard or an Impossible Burden for Plaintiffs?, 43 LOY. L.REV. 215 (1997).
[27] Trice v. Isaac, 99-839 (La.App. 5 Cir. 2/16/00); 759 So.2d 843, writ denied, 00-1113 (La.6/2/00); 763 So.2d 600.
[28] Greenhouse v. C.F. Kenner Assoc. Ltd. Partnership, 98-496 (La.App. 4 Cir. 11/10/98); 723 So.2d 1004, 1007.
[29] Maraist & Galligan, 71 TUL.L.REV. 339; Lee, 59 LA.L.REV. 1225; Piacun, 43 LOY.L.REV. 215.
[30] Maraist & Galligan, 71 TUL.L.REV. 339; Piacun, 43 LOY.L.REV. 215.
[31] Piacun, 43 LOY.L.REV. 215.
[32] Id. at 235, see Maraist & Galligan, 71 TUL. L.REV. 339.
[33] Lee, 59 LA.L.REV. at 1227-28.
[34] Strouse v. M & M Properties, 32,792 (La. App. 2 Cir. 3/3/00); 753 So.2d 434.
[35] McBride v. Cracker Barrel Stores, Inc., 94-370 (La.App. 3 Cir. 11/2/94); 649 So.2d 465, 467.
[36] 324 So.2d 441.
[37] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1986 (14th ed. 1961).
[38] Id. at 2549.
[39] Maraist & Galligan, 71 TUL.L.REV. 339.
[40] 242 La. 471, 137 So.2d 298, 302 (1962).
[41] Quick v. Murphy Oil Co., 93-2267 (La.App. 4 Cir. 9/20/94); 643 So.2d 1291, writ denied, 94-2583 (La.1/6/95); 648 So.2d 923.
[42] 567 So.2d 569, 574 (La.1990).
[43] Levi v. S.W. La. Elec. Membership Co-op., 542 So.2d 1081 (La.1989).
[44] Id.
[45] Tyler v. Our Lady of the Lake Hosp., Inc., 96-1750 (La.App. 1 Cir. 6/20/97); 696 So.2d 681.
[46] See Dobson, 567 So.2d 569.
[47] Blanchard, 702 So.2d 768.
[48] Mundy v. Department of Health & Human Resources; 620 So.2d 811 (La.1993).
[49] 159 F.2d 169 (2d Cir.1947).
[50] Graves v. Lou Ana Foods, Inc., 604 So.2d 150 (La.App. 3 Cir.1992).
[51] Dobson, 567 So.2d 569.
[52] 542 So.2d at 1086.
[53] Mundy, 620 So.2d 811.
[54] Roberts v. Benoit, 605 So.2d 1032 (La. 1991).
[55] Id. at 1045.
[56] Sinor v. National Cas. Co., 633 So.2d 720 (La.App. 1 Cir.1993).
[57] Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
[58] Blanchard, 702 So.2d 768.
[59] Stone, 12 STONE-LA. TORT DOCTRINE (1977).