# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-1420

VERMILION PARISH POLICE JURY

VERSUS

TIM ALBERT, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 76227
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

### MARC T. AMY
### JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Cooks, J., dissents.

Michael W. Campbell
Caffery, Oubre, Dugas
301 E. Kaliste Saloom, Suite 301
Lafayette, LA   70508
(337) 232-6581
COUNSEL FOR DEFENDANTS/APPELLEES:
    Louisiana Farm Bureau Casualty Ins. Co.
    Tim Albert
    Stacey Albert

Paul G. Moresi, III
Post Office Box 1140
Abbeville, LA 70511-1140
(337) 898-0111
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Vermilion Parish Police Jury

AMY, Judge.

A parish police jury filed suit against the defendant sugar-cane farmers, alleging that the defendants' harvesting operations damaged a parish road. The police jury sought to recover amounts expended to repair the damaged road. A bench trial was held in the matter, in which the judge dismissed the police jury's cause of action on the basis that the defendants could not have reasonably foreseen that their harvesting operations would cause damage to the road. From this judgment, the police jury appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

According to the record, Tim Albert, d/b/a Circle "A" Farm, Inc., and his brother, Stacy, began farming sugar cane on a plot of land on one side of Picard and Andrus Roads in rural Vermilion Parish in 1989. (Maps introduced into evidence by the police jury indicate that Picard and Andrus Roads are essentially the same road; the name merely changes after a sharp bend in the road.) In 1996, the Alberts began farming a plot of land on the opposite side of Picard and Andrus Roads. Tim Albert (hereinafter "Mr. Albert," as Stacy Albert did not testify at trial) explained during the proceedings below that during harvesting of sugar cane, farmers use tractors and cane carts to collect the crop from the field. The tractors then pull the cane carts to the loading site, where the harvested cane is transferred to an eighteen-wheeler for transportation to a mill. Mr. Albert noted that the loading site for these particular plots of land was only on one side of Picard and Andrus Roads, so that cane from the opposite side of the road would have to cross over in order to reach it. Mr. Albert testified that beginning on Monday, November 20, 2000, and continuing over the next seven to ten days, when he and his brother harvested the plots along Picard and Andrus Roads, the headland on the plot across the street from the loading site was wet

and muddy from heavy rains; consequently, it was unfit to be used by the tractors and cane carts *en route* to the loading site. As a result, the tractors and carts traveled a short distance down Picard and Andrus Roads to reach the loading site. Mr. Albert estimated that each cart weighed between 48,000 and 50,000 pounds (approximately 25 tons) and that roughly 285 to 325 trips were made to the loading site down Picard and Andrus Roads over the course of the seven to ten days of harvesting.

According to evidence presented at trial, the Vermilion Parish Police Jury received a complaint about the condition of Picard and Andrus Roads in December 2000. The evidence further indicated that the Parish had hard-surfaced these roads a few months before the complaint was received and that they were in good shape prior to the defendants' harvesting operations. Upon receiving the complaint about Picard and Andrus Roads, a member of the police jury went to the site to view the road for himself; according to his trial testimony, he concluded that sugar cane harvesting operations were responsible for the damage. Moreover, the police juror testified that the extent of the damage to the road, when compounded with the mud and water that had accumulated thereon, would not have been favorable for use by motorists. The police jury arranged for Parish workers to repair the damaged portion of the road; at first, the ruts were filled in with limestone in December 2000, and then, the road was resurfaced in May 2001.

The police jury's roads supervisor testified that he inspected the roads in question at the request of the police jury. He observed that the ruts in the street were rather deep at the intersection of Picard and Andrus Roads, so much so that "cars were dragging" the surface of the road. According to his calculations, 982 feet of the road was damaged.

The Vermilion Parish Police Jury filed suit against Tim Albert, d/b/a Circle "A" Farm, Inc., and Stacy Albert on May 3, 2001, alleging that the Alberts' farming operations had damaged Picard and Andrus Roads, and that it had repaired this road at a cost to the taxpayers of $9,645.00. The police jury asserted that pursuant to La.Civ.Code art. 2315 and La.R.S. 33:1236(17)[1], the Alberts were obliged to reimburse it for the amounts expended to repair the roads damaged by their harvesting operations.

On March 5, 2003, the matter proceeded to trial. At the conclusion of evidence, the judge ruled in favor of the defendants, dismissing the police jury's cause of action with prejudice. In her oral reasons for judgment, the trial judge explained that she did not find that the police jury had proven that it was reasonably foreseeable to the defendants that their use of the road would result in damages.

**Discussion**

Louisiana Civil Code Article 2315 provides the foundation for tort liability in Louisiana. This article states, in pertinent part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In order to establish a defendant's liability under La.Civ.Code art. 2315, an aggrieved party must succeed in a four-part duty/risk analysis:

> (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Davis v. Witt*, 02-3102, 02-3110, p. 10 (La. 7/2/03), 851 So.2d 1119, 1127.

---

[1]La.R.S. 33:1236(17) allows police juries and parish governments to file suit against "any person for whose account levees, roads, etc., may have been made or repaired at the expense of the parish, and to obtain the reimbursement of said amount, by privilege on the land subject to the works."

The Civil Code addresses negligence, a species of tort liability, in Article 2316, which states that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." *See Myers v. Dronet*, 01-5 (La.App. 3 Cir. 6/22/01), 801 So.2d 1097. In order to prevail in a negligence cause of action brought under La.Civ.Code art. 2316, an aggrieved party must meet the following five-pronged test, as outlined by a panel of this court in *Myers*, 801 So.2d at 1104:

> (1) the delictual conduct was the cause-in-fact of the damage or injury; (2) the defendant owed the plaintiff a duty under the specific circumstances of the particular case; (3) the particular defendant breached the duty which s/he owed the particular plaintiff; (4) the risk and resulting harm stood within the scope of protection of the defendant's duty; and (5) the plaintiff showed actual damage.

In the instant appeal, the police jury contests the trial judge's determination that the defendants could not have reasonably foreseen that their farming operations would have damaged Picard and Andrus Roads. A helpful discussion of the significance of "reasonable foreseeability" is found in the fourth circuit's opinion in *Maeder v. Williams*, 94-754 (La.App. 4 Cir. 11/30/94), 652 So.2d 1005, *writ denied*, 94-3150 (La. 3/10/95), 650 So.2d 1177, in which the court stated as follows:

> Generally, negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. *Dobson v. Louisiana Power and Light Company*, 567 So.2d 569 (La.1990). A particular unforeseeable risk may be included within the scope of a duty if the injury is easily associated with the rule relied on and with other risks of the same type that are foreseeable and clearly within the ambit of protection. *Forest v. State, thru La. Dept. of Transportation*, 493 So.2d 563 (La.1986).
>
> In reviewing a determination that negligence exists, the reviewing court must consider the ease with which it can associate the duty owed and the risk encountered, whether the breached duty was a substantial cause and whether the risk is reasonably foreseeable. See, *Sibley v. Gifford Hill and Co. Inc.*, 475 So.2d 315 (La.1985); *Dunne v. Orleans Parish School Board*, 463 So.2d 1267 (La.1985).

4

*Maeder*, 652 So.2d at 1013. Whether a party has breached a duty owed to another is a matter of fact. *See Mundy v. Department of Health and Human Resources*, 620 So.2d 811 (La.1993). In reviewing a trial court's factual determinations, an appellate court is to employ the manifest error–clearly wrong standard. *Hill v. Morehouse Parish Police Jury*, 95-1100 (La. 1/16/96), 666 So.2d 612.

The record of the proceedings below contains the following exchange between the trial judge and the attorney for the police jury, in which the trial judge expresses concern as to proof of the foreseeability aspect of the police jury's cause of action:

> THE COURT: Well, I guess I want you to point out for me what evidence is in the record to show just that, what you're saying that – in other words, that it quickly became evident and that they continued to use the road in spite of the manifestation of the damage. I would like for you to point in the record to me where that evidence exists.
>
> [Counsel for the Vermilion Parish Police Jury]: Well, there was some testimony [...] regarding the  – I think prior to the actual damage of the surface of the road, that there was some complaints about mud and that he pointed out to them that they couldn't continue to use the road in the manner that they were using it.
>
> I'm not sure that the surface was damaged at that time. It would have probably been difficult to tell because of the amount of the mud on the road. But I think there was some signal or message from the  – an employee of the police jury to the defendants that they couldn't continue to use the road in the manner that they used it.
>
> I'm not sure if that addresses the Court's –
>
> THE COURT: Well, I mean, telling someone you can't leave mud on the road is different than telling someone you are damaging the road. Or having a witness say, yes, early in the operation, I saw ruts in the road, and, you know, it was obvious to me  – I mean, that's what I'm seeing a lack of in the record here, is that – is some notice to these defendants.
>
> Because, while I agree with you, certainly the better practice would have been for them to use the headlands, the question that – as I said, because it's on the straight theory of negligence – is should they have anticipated that this road could not withstand their operation and at what point did they receive notice that it could not. And that's what I'm having a little trouble with.
>
> [Counsel for the police jury]: Your Honor, all I can say is – point to the evidence that the road was used literally hundreds of times in connection with the harvesting. If the defendants had only made three or four passes down that road in a matter of a couple days, I would agree

5

that it may not be foreseeable or anticipated that that would damage it. But, to use it 300 times, I would think that the Court –

THE COURT: Yeah, but, you see, that's the thing, is how are they going to know that. In other words, they don't know how the road's built. They don't know what its loading capacity is. We're all agreeing that there was no posting regarding load. And, actually, the weight doesn't seem to be the problem.

So the question is, when you're asking me to hold somebody responsible for being negligent and for negligent use or misuse of a road, one of the issues that I have to address is whether it was a foreseeable situation.

In other words, should the prudent farmer have said, I know I can't use this road? That's what I'm having trouble with. Because there was no overt notice to them about it. And the only notice that they would have had is once some damage started to show up. And yet there's nothing in the record to show when that occurred. We're talking about a very small window here.

And, when they were put on notice, apparently the operation ceased and hasn't been renewed. And so that's my – that's the trouble that I'm having, is the question of did they have notice that the road was not capable of handling this operation and when did they have the notice of it.

The record reflects that Tim Albert admitted that he used Picard and Andrus Roads during harvesting operations in late November 2000. However, Mr. Albert testified at trial that he used this road because he could not have used heavy equipment such as tractors and carts on the headlands during this particular harvest. He explained that, due to the heavy rains, the headlands, which are comprised solely of dirt, turned into mud, which the heavy equipment could not traverse. Mr. Albert testified that he and his brother hauled rocks to the area of the harvest in an effort to remove some of the mud from the tractor tires before going onto the road and that he also fitted a blade to the tractors for the purpose of scraping the mud from the road.

Mr. Albert noted that in November 2000, the plot of land across the road from the loading site did not have a cross-bridge and culvert, which could have been utilized in moving the harvest to the loading site in lieu of the headlands or the road. He stated that he contacted the police jury with respect to installing a culvert and

6

cross-bridge, and one was installed when the ground dried out. Now that the culvert and bridge have been installed, and because the fields have been dry, the Alberts use the bridge and the field road instead of using Picard and Andrus Roads during harvesting operations.

At trial, Mr. Albert maintained that neither the police jury nor any of its representatives had asked him to stop using Picard and Andrus Roads during the November 2000 harvest and that no one informed him to stop because the road was being damaged. Moreover, he noted that he had not seen any signs along the road that indicated that it was subject to weight or use restrictions.

Based upon our review of the record, we do not find that the trial judge was manifestly erroneous or clearly wrong in her determination in this matter. The evidence adduced at trial is insufficient to prove by a preponderance of the evidence that the consequences of the Albert's harvesting operation were reasonably foreseeable to them. Although the police jury provided testimony regarding the extent of damages to the road, no testimony was offered to show that the Alberts had been warned about the consequences of using tractors and cane carts on Picard and Andrus Roads. According to the record, the road was resurfaced using the least expensive hard surface and the least expensive road base available, which affected the amount of weight the road could handle; however, the evidence also indicates that there were no road-use-restriction signs in place. In addition, although the police jury introduced the stipulated testimony of several residents of Picard and Andrus Roads—*viz.*, that the road was resurfaced a few months before December 2000, that the roads were in good shape before December 2000, that the defendants were using Picard and Andrus Roads with tractors and cane carts during December 2000, that after use of the roads by the defendants, the surfaces were damaged, and that the witnesses saw no other

7

activity which could have caused the damage—the trial judge was not required to find that this testimony proved that the consequences of using tractors and cane carts on the road were reasonably foreseeable to the Alberts. Finally, the record reflects that the road was covered in mud as a result of the harvesting operation, and the record does not indicate when the defendants became aware of any damage. In sum, we find no manifest error in the trial judge's determination that the plaintiff had not proven its negligence cause of action by a preponderance of the evidence. This assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. The Police Jury is cast with the cost of the stenographer. La.R.S. 13:4521(C); *See West Baton Rouge Parish Police Jury v. Westside Aero, Ltd.*, 572 So.2d 1127 (La.App. 1 Cir. 1990).

**AFFIRMED.**