# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-0328

HAROLD THIBODEAUX

VERSUS

MELINDA TRAHAN, ET AL

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20075620
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and, Jimmie C. Peters, Judges.

**AFFIRMED AS AMENDED.**

Rusty Galloway
Britney L. Hebert
GALLOWAY JEFCOAT, L.L.P.
P. O. Box 61550
Lafayette, LA 70596-1550
(337) 984-8020
COUNSEL FOR PLAINTIFF/APPELLANT:
    Harold Thibodeaux

L. Lane Roy
Elizabeth A. Hunt
Pries and Roy
P. O. Drawer 94-C
Lafayette, LA 70509
(337) 237-6062
COUNSEL FOR DEFENDANTS/APPELLEES:
    Melinda Trahan and Lafayette Parish School Board

**Antonio Ferachi**
**Attorney at Law**
**P. O. Box 4064**
**Baton Rouge, LA 70821-4064**
**(225) 219-2080**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
　　**Secretary of the Department of Revenue,**
　　**State of Louisiana**

**Cassie L. Willis**
**Attorney at Law**
**903 W. University Ave.**
**Lafayette, LA 70506**
**(337) 234-5149**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
　　**Lafayette Parish School Board, Sales and Use**
　　**Tax Division**

PETERS, J.

This personal injury litigation arises from an October 18, 2006 vehicle accident which occurred in Duson, Lafayette Parish, Louisiana. The plaintiff, Harold Thibodeaux, brought suit against Melinda Trahan and her employer, the Lafayette Parish School Board, to recover damages he sustained in the accident. Following a bench trial, the trial court found that Mr. Thibodeaux has sustained $70,500.00 in general damages and $73,218.41 in past and future medical expenses. The trial court also assigned sixty percent of the fault in causing the accident to Ms. Trahan and assigned the remaining forty percent to Mr. Thibodeaux. For the following reasons, we affirm the trial court's finding of joint fault in causing the accident, but adjust the percentages of fault, and we amend the general damage award and affirm that award as amended.

## DISCUSSION OF THE RECORD

The accident at issue in this litigation occurred in the parking lot of Thib's Corner Grocery Store (Thib's Corner) which is located on the northwest corner of Richfield Road and Fourth Street in Duson, Louisiana. Richfield Road is a two-lane highway running north and south in the vicinity of the accident, and Fourth Street intersects Richfield Road from the west. However, it does not extend through Richfield Road to the east because a ditch runs generally parallel to the highway on the east side. In fact, all of the connecting streets in the vicinity of the accident intersect Richfield Road from the west and do not extend east of the highway because of the ditch.

On October 18, 2006, Ms. Trahan was on her afternoon bus route transporting children home from school.[1] As she traveled north on Richfield Road, a recreational vehicle (RV) driven by Mr. Thibodeaux and owned by Kayla Duhon

_____

[1] It is not disputed that Ms. Trahan was operating within the course and scope of her employment with the Lafayette Parish School Board as a special education bus driver at the time of the accident.

entered the highway in front of her from Third Street and proceeded north on Richfield Road. However, Mr. Thibodeaux did not continue north on the highway. Instead, after traversing a little over one-half of the block between Third and Fourth Streets, he turned left into the parking lot at Thib's Grocery. Ms. Trahan, who was approaching the RV from the rear, turned her bus into the parking lot as well and the vehicles collided therein. Mr. Thibodeaux sustained an injury to his right knee in the accident.

With regard to how the accident occurred, the evidence presented to the trial court was externally conflicting and often internally inconsistent. After hearing all of the evidence, the trial court issued oral reasons for judgment recognizing the conflicting nature of the testimony, determining the amount of Mr. Thibodeaux's damages, and finding both parties at fault in causing the accident. After the ruling was reduced to judgment, Mr. Thibodeaux appealed, asserting that the trial court erred in finding him partially at fault in causing the accident and erred in awarding him inadequate general damages.

### OPINION

Mr. Thibodeaux's suit is a general negligence action under La.Civ.Code art. 2315(A), which provides that "[e]very act whatever of man that causes damage to another obligates him by whose fault it happened to repair it." In a general negligence action, the plaintiff is required to prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*La Pac Mfg., Inc. v. TCM Mfg., Inc.*, 06-748, p. 6 (La.App. 3 Cir. 12/6/06), 944 So.2d 831, 835-36, *writ denied*, 07-42 (La. 3/9/07), 949 So.2d 445 (citation

omitted).

Pursuant to the manifest error standard of review, a trial court's findings of fact will not be set aside in the absence of manifest error or unless they are clearly wrong. Where there is conflict in the testimony, inferences of fact should not be disturbed upon review even though the reviewing court may feel its own evaluations and inferences are reasonable. *Rossell v. ESCO*, 549 So.2d 840 (La.1989); *Stobart v. Dept. though DOTD*, 617 So.2d 880 (La.1993). In order for a reviewing court to reverse a factfinder's factual determinations, the reviewing court must find that a reasonable factual basis does not exist in the record for the finding and that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart*, 617 So.2d 880.

### *Apportionment of Fault Issue*

Although a number of individuals testified to having seen all or part of the events leading up to the accident, the trial court was left with numerous conflicting versions of how the accident occurred. From the testimony and exhibits presented, the trial court made specific findings of fact upon which it based its determination of fault. In its oral reasons for judgment, the trial court found Mr. Thibodeaux at fault for having "pulled out in front of Ms. Trahan while driving an RV in the rain while she was driving a school bus." With regards to Ms. Trahan, the trial court concluded that she was at fault because she "should have been a bit more careful when she saw the defendant pull out in front of her." Specifically, the trial court concluded that she "slammed on her brakes . . . and by doing so, [she] began to lose control of the bus."

About the only thing not in conflict in the testimony presented was the physical layout of the area surrounding the accident scene. Richfield Road intersects three other streets from the west on the south side of its intersection with

3

Fourth Street. These are appropriately named Third, Second, and First Streets, and the distance between each of these intersections is approximately 300 feet. Additionally, a railroad crossing traverses Richfield Road immediately to the south of the First Street intersection, although the distance between that crossing and the First Street intersection is not made clear in the record.

Mr. Thibodeaux testified that he came to a complete stop at the Third Street intersection. He admitted seeing the school bus approaching from the south on Richfield Road, but testified that when he began pulling onto Richfield Road, the school bus was just crossing the railroad tracks, or almost three blocks away. He traveled 165 to 175 feet north on Richfield Road and turned into the Thib's Corner parking lot. Before making his turn into the parking lot, he came to a complete stop to allow a southbound vehicle on Richfield Road to pass. He testified that before making his turn, he activated his left turn signal and looked behind for oncoming traffic. He testified that he did not see the school bus approaching from the rear and concluded that she had turned on one of the intersecting streets behind him. According to Mr. Thibodeaux, after he entered the parking lot the school bus struck the RV approximately two feet from the back of the camper and continued to move forward along the driver's side.

At trial, Ms. Trahan testified that when she crossed the railroad tracks, she observed no traffic coming out of the side streets onto Richfield Road. In fact, she testified that she was approximately half way between First and Second Street when she first saw the RV. At that time, it was pulling onto Richfield Road from Third Street. She estimated her speed when she first saw the RV to be twenty to twenty-five miles per hour. According to Ms. Trahan, she engaged her brakes to slow the school bus and then released the brake to avoid losing control of the bus. She testified at trial that at no time did she slam on her brakes or lose control of the

4

bus.  However, she also acknowledged at trial that in her discovery deposition she stated that she had slammed on her brakes, lost control, and the bus began swerving.  According to Ms. Trahan's trial testimony, she only reapplied her brakes when she began to pass the RV near Thib's Corner.  She did so then because she observed a vehicle coming toward her from the north on Richfield Road.  In fact, she testified that she applied her brakes for the purpose of turning into the Thib's Corner parking lot because she had determined that she did not have adequate time to pass the RV.  According to Ms. Trahan, both she and Mr. Thibodeaux pulled into the parking lot at the same time.

Not only did Ms. Trahan's trial testimony conflict with various statements made in her discovery deposition, but it conflicted significantly with the statement she gave the investigative officers immediately after the accident.  In fact, the trial court relied on this statement in its oral reasons for judgment as the best explanation as to "how the accident occurred."  In that initial statement, Ms. Trahan asserted the following:

> I was driving my children home after school on S[outh] Richfield when a camper pulled out directly in the front of me.  I never saw him stopped at the stop sign.  I just saw him pull out and immediately come to a stop to turn into the store on the left.  I swerved left to avoid hitting him from behind after seeing there was no on coming [sic] traffic.  He turned into the parking lot at the same time and hit my bus with his rearview mirror.  We collided in  a parking lot and no injuries were incurred.

Other lay witnesses on the issue of fault included Stephen M. Leger, the driver of a vehicle traveling north on Richfield Road behind the school bus; Michael Benoit, a Thib's Corner customer; Marsha Hale, a passenger on Ms. Trahan's bus; Perry Alleman, a pedestrian on Third Street; and Officer Gerald Credeur, the law enforcement officer who investigated the accident. The testimony of these witnesses did not resolve the factual conflicts.

5

Mr. Leger testified that he turned onto Richfield Road from First Street after the school bus had traversed both the railroad track and the First Street intersection. As he traveled north behind the school bus, he observed that Mr. Thibodeaux had activated the RV's left turn signal. According to Mr. Leger, the RV turned into the parking lot first and was more than one-half into the lot when the school bus began its turn. He testified that he observed the school bus strike the back portion of the RV. Although he was directly behind Ms. Trahan's school bus, he never saw her engage her brakes. However, despite the fact that it was a generally accepted fact that the accident occurred during a rain event, Mr. Leger did not recall that it was raining at the time.

Mr. Benoit observed the accident from inside Thib's Corner. According to Mr. Benoit, the school bus and the RV entered the parking lot at almost the same time with the RV being slightly ahead. He saw the RV come to a complete stop, and only heard the impact thereafter. Additionally, he acknowledged that his vision of the entire scene was impaired by the internal structure of the store.

Immediately after the accident, Ms. Hale gave a written statement to Officer Credeur to the effect that she was attempting to assist a student secure his seat belt and saw nothing until "[Ms. Trahan] pulled to avoid the accident & the camper kept coming & collided with her." At trial, she testified that she looked forward as the school bus traversed the railroad tracks and observed the RV at the Third Street intersection. However, she did not see it pull onto Richfield Road. Instead, she suggested that after the bus passed over the railroad track, she began working with the student's seat belt and saw nothing until Ms. Trahan "evidently said something" to cause her to look up. When she looked up, she saw the RV pulling out in front of the school bus. However, in her discovery deposition she testified that she did not see the RV until Ms. Trahan swerved to enter the parking lot, and,

6

at that point, the RV was immediately in front of the school bus.  In her deposition and at trial, she testified that the school bus did not swerve before the turn into the parking lot and that Ms. Trahan never slammed on her brakes.  At the same time, she testified at trial that she might not have noticed the school bus swerving earlier because she was so involved with the children on the bus.  With regard to the sequence of arrival in the parking lot, Ms. Hale testified that both vehicles arrived at almost the same time with the school bus being slightly ahead.  She testified that the RV's mirror hit the school bus.

Mr. Alleman testified that he was standing in front of his house on Third Street when he observed Mr. Thibodeaux's RV approach the street's intersection with Richfield Road.  According to Mr. Allman, Mr. Thibodeaux did not come to a complete stop before entering onto Richfield Road.  However, Mr. Alleman also had difficulty with the weather conditions on the day of the accident in that he had previously testified in his discovery deposition that the weather was dry at the time of the accident.  Additionally, he acknowledged at trial that he had previously lived with Ms. Duhon, the owner of the RV.

Officer Credeur's testimony was to the effect that had the road surface been dry and if Ms. Trahan was between First and Second Streets as she attested, there was no question in his mind but that she should have been able to stop before striking the RV after it turned onto Richfield Road.  He had no opinion concerning the effect of the wet conditions he encountered on that day.  He did testify, however, that Ms. Trahan did not tell him on the day of the accident that her vehicle had swerved before the collision, nor did she tell him that she had attempted a passing maneuver.

Each side in the litigation offered the testimony of an accident reconstruction expert.  Vernon Tekell, Jr., the owner and principal engineer for Dean Tekell

7

Consulting, L.L.C. from Lafayette, Louisiana, testified for Mr. Thibodeaux. Based on the physical layout of the area surrounding the accident scene and assuming the appropriate reaction times and drag coefficient, Mr. Tekell concluded that either Ms. Trahan was traveling faster than twenty to twenty-five miles per hour or she was distracted by something. Otherwise, according to Mr. Tekell, she would have more than enough time to engage her brakes in a normal manner and stop the school bus before striking the RV.

The defendant's expert, Mike Jones, Jr., the president of Stress Dynamics, Inc. and a retired professor emeritus in civil engineering from Texas A&M University, College Station, Texas, agreed with Mr. Tekell's conclusion with regard to Ms. Trahan's ability to stop before striking Mr. Thibodeaux's RV from the rear. In fact, Mr. Jones acknowledged that had the highway been frozen rather than simply wet, Ms. Trahan would still have had adequate time to stop. Despite his agreement with Mr. Tekell's opinion concerning Ms. Trahan's ability to stop behind the RV, Mr. Jones still opined that the accident was caused totally by Mr. Thibodeaux's fault. He reached this conclusion by assuming that Ms. Trahan had entered the parking lot before the oncoming southbound vehicle passed Thib's Corner, and that Mr. Thibodeaux entered after the southbound vehicle had passed.

With regard to the statutory duty imposed on Ms. Trahan in approaching a vehicle from the rear, La.R.S. 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." If a following motorists strikes the forward vehicle from the rear, he or she is presumed to have breached the duty imposed by La.R.S. 32:81(A). *Mart v. Hill*, 505 So.2d 1120 (La.1987).

8

A following motorist may, however, rebut the presumption by demonstrating that he or she had his car under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances, or by proving that the driver of the lead car negligently created a hazard which the following motorist could not reasonably avoid. The following motorist bears the burden of showing he was not negligent.

*Menard v. Federated Mut. Ins. Co.*, 05-85, pp. 3-4 (La.App. 3 Cir. 6/22/05), 906 So.2d 746, 750, *writ denied*, 05-1925 (La. 3/10/06), 925 So.2d 506 (citations omitted).

As previously stated, in its oral reasons for judgment, the trial court concluded that Ms. Trahan "slammed on her brakes . . . and by doing so, [she] began to lose control of the bus" as she approached the RV from the rear. Given the evidentiary record before us, we find no manifest error in that factual finding. *Rossell*, 549 So.2d 840; *Stobart*, 617 So.2d 880. Additionally, the fact witnesses and experts who testified established by a preponderance of the evidence that her action in forcefully applying the brakes was completely unnecessary as she had adequate time to come to a complete stop behind the RV if necessary. That is to say, Ms. Trahan failed to keep her school bus under control, failed to closely observe the RV in front of her, and failed to maintain a safe distance between her school bus and the RV. Furthermore, nothing in the record supports her argument that Mr. Thibodeaux negligently created a hazard by pulling out in front of her onto Richfield Road. Thus, Ms. Trahan breached the duty imposed upon her by La.R.S. 32:81(A).

The manner in which the trial court addressed the fault issues precluded it from addressing any negligence that might be imposed on the parties due to their individual actions immediately before and including the actual impact of the two vehicles. Ms. Trahan suggested that she was required to abort her attempt to pass Mr. Thibodeaux and to turn into the parking lot because of an oncoming vehicle in the opposite lane. Assuming this to be true, Ms. Trahan violated the duty imposed

on her by La.R.S. 32:75 in that she began passing Mr. Thibodeaux at a point where the opposite lane was not "free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken." However, this factual scenario is not supported by the bulk of the evidence as almost all of the other witnesses were consistent in stating that both the RV and the school bus entered the parking lot at basically the same time. Mr. Thibodeaux established that more probably than not, he waited for the southbound vehicle to pass and then turned into the parking lot. This is consistent with Ms. Trahan following too close and having to take a last-second evasive maneuver by turning into the parking lot at the same time as Mr. Thibodeaux after the southbound vehicle passed by them. This version of the facts also supports Mr. Thibodeaux's assertion that he failed to see Ms. Trahan's vehicle before he turned into the parking lot. Simply stated, she had entered his "blind spot" on the side of his vehicle.

Given the record before us, we find that Ms. Trahan breached the duties imposed on her as described herein; that those duties were owed to the general public, including Mr. Thibodeaux; and that the breach of these duties was both a cause-in-fact and legal cause of Mr. Thibodeaux's harm. Thus, we find no error in the trial court's assessment of fault against Ms. Trahan in causing the accident.

Turning to Mr. Thibodeaux, the trial court's reasons for judgment establish that the trial court found him at fault because he pulled out in front of an oncoming school bus in the rain. We do not find that this statement alone imposes fault on Mr. Thibodeaux.

Louisiana Revised Statutes 32:123(B) provides in pertinent part that "the driver shall yield the right of way to all vehicles . . . which are approaching so

10

closely on said highway *as to constitute an immediate hazard.*" (Emphasis added). In this case, Ms. Trahan was approximately 450 feet from the Third Street intersection when Mr. Thibodeaux entered Richfield Road, and both experts who testified (even her own expert) were of the opinion that 450 feet was more than enough stopping distance under the conditions that existed—even without taking into consideration the uncontested fact that Mr. Thibodeaux had traveled an additional 160 to 170 feet down the highway before impact. Therefore, Mr. Thibodeaux's action in pulling onto Richfield Road did not constitute an immediate hazard and the trial court erred in assigning him a portion of fault for that reason alone.

However, when we turn to the particulars of the impact in the parking lot, we do find that Mr. Thibodeaux was partially at fault in causing the accident. Louisiana Revised Statutes 32:104(A) provides in pertinent part that "[n]o person shall . . . turn a vehicle to enter a private road or driveway . . . unless and until such movement can be made with reasonable safety." In this case, Mr. Thibodeaux testified that he signaled his turn and looked behind for oncoming traffic. However, while he may have looked in his rear view or side mirror before making the left turn, it is clear that he failed to observe what he should have seen – that Ms. Trahan had already begun a passing maneuver before he turned. Thus, he failed to ascertain that the left turn could be made with reasonable safety. Given the record before us, we find that Mr. Thibodeaux breached the duty imposed on him when making a left turn into a private drive; that this duty was owed to the general public, including Ms. Trahan; and that the breach of this duty was both a cause-in-fact and legal cause of the accident. Thus, for different reasons than those asserted by the trial court, we find that Mr. Thibodeaux should be assessed with some of the fault in causing the accident.

11

In determining fault allocation, the supreme court laid out five factors which might influence the percentage of fault assigned between parties:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidence by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So.2d 967, 973 (La.1985).

Considering the findings stated above, we find that the majority of the fault in this instance should be allocated to Ms. Trahan. Although both parties' fault arose from inadvertence on their part, we find that the majority of the fault should rest with Ms. Trahan as she was in a better position, as the following vehicle, to prevent the accident from happening. This accident would not have occurred had she stopped the bus within the adequate stopping distance existing between her and the RV and had she noticed the oncoming southbound vehicle before attempting to pass the RV. Accordingly, we allocate twenty percent of the fault to Mr. Thibodeaux and the remaining eighty percent to Ms. Trahan.

### *Quantum Issue*

In his appeal, Mr. Thibodeaux also asserts that the trial court erred in awarding him an inadequate amount for general damages

> "General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" *Duncan v. Kansas City S. Ry. Co.*, 00-66, p. 13 (La. 10/30/00), 773 So.2d 670, 682, *cert. dismissed*, 532 U.S. 992, 121 S.Ct. 1651 (2001) (quoting *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir. 1993)). In considering whether the award of general damages is excessive, we are guided by the decision in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510

U.S. 1114, 114 S.Ct. 1059 (1994), wherein the supreme court noted that "the discretion vested in the trier of fact is 'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Under *Youn*, "[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Id.* at 1260. Only after the initial inquiry is answered in the affirmative should the appellate court increase or reduce the award. *Id.*

*Jones v. Centerpoint Energy Entex*, 11-2, 11-3, pp. 16-17 (La.App. 3 Cir. 5/25/11), 66 So.3d 539, 552.

According to Mr. Thibodeaux, he was still applying the brakes to the RV when the collision occurred in the parking lot. The impact caused his right knee to twist into the steering column of the RV. He did not seek medical treatment immediately after the accident, but by that same evening, the knee had begun to cause him serious pain. He sought medical treatment the day after the accident at a Crowley, Louisiana hospital. According to Mr. Thibodeaux, his knee was swollen and throbbing from pain. The medical team at the hospital took x-rays of the knee, placed it in a brace, and released him to return home.

Mr. Thibodeaux next sought medical treatment from Dr. Thomas J. Montgomery, a Lafayette, Louisiana orthopedic surgeon. Based on the findings from a December 6, 2006 MRI, Dr. Montgomery concluded that Mr. Thibodeaux had sustained a torn anterior cruciate ligament (ACL) and medial meniscus. When physical therapy did not resolve the pain, Dr. Montgomery surgically repaired the torn ACL and meniscus on February 15, 2007. However, Mr. Thibodeaux continued to suffer problems with the knee despite undergoing additional extensive physical therapy. An April 9, 2008 MRI revealed a possible ACL tear, a medial meniscal tear, and moderate chondromalacia. Dr. Montgomery recommended a second surgery, but at trial Mr. Thibodeaux had yet to submit himself to the doctor

for the surgery. According to Mr. Thibodeaux, he wanted to undergo the surgery, but he had no health insurance and could not afford to pay for the surgery.

Mr. Thibodeaux testified that after the surgery his knee continued to give him significant pain, which he rated as eight on a scale of one to ten. The post-surgery physical therapy gave him some temporary relief, but he continued to experience pain and a popping sensation in the knee. He testified that he has undergone cortisone shots in his knee for relief and that he takes anti-inflammatory medication, uses a rubbing cream, and wears a knee brace.

According to Mr. Thibodeaux, his working ability has been affected by his injury because he is unable to lift as much as previously and he can no longer stoop down while working. His favorite pastime before the accident was riding his motorcycle. He rode almost every weekend and liked attending motorcycle rallies. However, his knee injury has drastically limited that activity and he now finds that he is able to ride his motorcycle no more than once a month.

In its oral reasons, the trial court stated that it was awarding Mr. Thibodeaux $1,500.00 per month for the forty-seven months between the accident and the day of trial, for a total award of $70,500.00 for his pain and suffering. However, this amount only represents an award for Mr. Thibodeaux's past pain and suffering. Because the trial court accepted as fact that Mr. Thibodeaux will require future surgery by awarding future medical expenses for that surgery, we find that it was error for the trial court not to award him damages for his future pain and suffering.

Based on the supreme court's holding in *Ryan v. Zurich American Insurance, Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214, we are only allowed to increase the award to the lowest amount reasonably within the trier of fact's discretion. "In adjusting the award, we refer to prior awards in similar cases to determine the lowest point of an award within that discretion. *Coco v. Winston*

*Indus., Inc.*, 341 So.2d 332 (La.1976)." *Baltazar v. Wolinski*, 10-757, p. 14 (La.App. 3 Cir. 12/8/10), 53 So.3d, 591, 600.

In *Dawson v. City of Bogalusa*, 95-824 (La.App. 1 Cir. 12/15/95), 669 So.2d 451, the first circuit awarded a plaintiff $110,000.00 in general damages for injuries she sustained after stepping in a pothole. The accident aggravated her degenerative arthritis in her knee, resulted in arthroscopic surgery on that knee to repair a tear in the posterior horn of the knee cartilage, and will require future knee replacement surgery. Plaintiff also suffered a severe ankle sprain, a nerve injury between her toes, permanent partial disability, and depression.

In *Stockstill v. C.F Industries, Inc.*, 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, the first circuit affirmed an award of $150,000.00 in pain and suffering to a plaintiff who suffered a torn ACL and a sprained medial collateral ligament, underwent surgical repair of the tear, suffered a thirty-five percent permanent impairment, and will likely require a total knee replacement.

In *Trueman v. City of Alexandria*, 01-1130 (La.App. 3 Cir. 5/15/02), 818 So.2d 1021, this court increased a general damage award from $50,000.00 to $125,000.00, for a plaintiff who fell after stepping in a water meter box. The plaintiff suffered a medial meniscus tear and an aggravation of his degenerative arthritis. In addition to surgery to repair the meniscus tear, the plaintiff would also require a total knee replacement.

In *Jackson v. Cockerham*, 05-320 (La.App. 4 Cir. 5/10/06), 931 So.2d 1138, the fourth circuit affirmed a general damage award of $300,000.00 to a plaintiff who suffered a torn meniscus and ACL, underwent arthroscopic surgery, and then a total knee replacement as a result of a bus accident.

After reviewing these awards and the evidence presented at trial, we conclude that the lowest amount that the trial court could have awarded Mr.

15

Thibodeaux for his past, present, and future pain and suffering is $110,000.00. Accordingly, we amend the trial court's judgment to reflect an award of $110,000.00 in general damages.

## DISPOSITION

For the foregoing reasons, we amend the judgment of the trial court to allocate twenty percent fault to Mr. Thibodeaux and eighty percent fault to Ms. Trahan. We further amend the trial court judgment to increase Mr. Thibodeaux's general damage award for pain and suffering from $70,500.00 to $110,000.00. We assess costs of this appeal to Melinda Trahan and the Lafayette Parish School Board.

**AFFIRMED AS AMENDED.**