*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## OPINION

No. 04-11-00305-CV

**SAECO ELECTRIC & UTILITY, LTD.**,
Appellant

v.

Christopher D. **GONZALES**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-16576
Honorable Janet P. Littlejohn, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by: Sandee Bryan Marion, Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice (concurring in judgment only)

Delivered and Filed: October 17, 2012

AFFIRMED

In an opinion and judgment dated April 18, 2012, we reversed and remanded for a new

trial. Appellee, Christopher D. Gonzales, filed a motion for rehearing. We grant Gonzales's

motion, withdraw our majority and dissenting opinions and judgment of April 18, 2012, and

issue this opinion and judgment in its place. Appellant, Saeco Electric & Utility, Ltd. (Saeco),

appeals the trial court's order denying its motions for judgment notwithstanding the verdict (JNOV) and rendering final judgment in favor of appellee, Christopher D. Gonzales. We affirm.

## FACTUAL BACKGROUND

On June 16, 2009, Gonzales was involved in a multi-vehicle motor vehicle accident at the intersection of Evans Road and Highway 281 South in San Antonio. Gonzales was uninjured, but his vehicle was damaged as a result of the collision. Following the accident, Gonzales moved his vehicle off the roadway and into a parking lot in a shopping center overlooking the intersection. He then returned to the accident scene in order to provide his information to the investigating police officer. Gonzales was directed by another police officer to move off the roadway and to wait on the section of land located at the northwest corner of the intersection. Gonzales stood in this area and spoke with an EMS technician while waiting for the investigating officer. Shortly after this, the ground underneath Gonzales suddenly caved in, causing his left leg to enter the hole created in the ground. A metal grounding rod entered Gonzales's body at the back of his left leg and transected his body over his penis to his right abdominal cavity. At least twelve inches of the rod penetrated his body.

Gonzales was taken to the hospital and later diagnosed with a urethral stricture, intractable pain from scar tissue, permanent damage to his perineal nerve, impotence, and Post Traumatic Stress Disorder (PTSD)—all as a result of the rod entering his body. It was later discovered that the eighteen-inch diameter, seven-foot deep hole was created when an old wooden traffic-signal pole had been removed from the intersection. However, the five-eighths inch diameter, seven-foot long, metal grounding rod associated with the wooden pole had not been removed from the hole when the pole was pulled. This is the metal rod that entered Gonzales's body.

Prior to Gonzales's injury, construction work was being performed on the traffic signals and turn lanes at the same intersection by a general contractor, Ram Building Services, LLC (Ram), and its subcontractor, Saeco, under Ram's contract with the City of San Antonio (the City). Saeco, as a subcontractor, was specifically hired to remove the old wooden pole, install a new aluminum traffic pole, and install pedestrian-crossing push buttons at the northwest corner of the intersection of Evans Road and Highway 281. As part of the project, Saeco was supposed to remove the metal grounding rod following the removal of the wooden pole or cut the rod off below ground level. Saeco was then supposed to backfill the hole. After this, Saeco had to wait for the City to construct new turn lanes over the highway before completing its project.

On June 1, 2009, Saeco removed the wooden pole and backfilled the hole. Gonzales's injury occurred about two weeks later. Saeco returned to the same location on August 4, 2009, after the turn lanes were completed by the City, to finish its project and install the signs on the new pole for pedestrian-crossing push buttons. At this time, Saeco's employees discovered the hole with the old metal grounding rod still inside. Saeco then removed the metal grounding rod and properly backfilled the hole. However, prior to this, Saeco was unaware of Gonzales's injury.

Gonzales filed suit against Saeco, Ram, and the City, asserting violations of the Texas Tort Claims Act and negligence claims. In his pleadings, Gonzales claimed he was an invitee on the premises, and he sought recovery of actual damages based on his personal injuries. After settlements with the City and Ram, a jury trial against Saeco began in January 2011. The jury returned a verdict in favor of Gonzales, awarding actual damages in the amount of $5,529,709.88, which the trial court reduced to $5,175,246.37 after the application of settlement credits. Following the verdict, the trial court signed a final judgment, overruling Saeco's initial

motion for judgment notwithstanding the verdict. Saeco timely filed a second motion for judgment notwithstanding the verdict and a motion for new trial, both of which the trial court denied. Saeco timely filed a notice of appeal.

## JURY CHARGE ERROR

In the first issue on appeal, Saeco argues the trial court erred in denying its motions for judgment notwithstanding the verdict and rendering final judgment on the jury's verdict. Saeco contends this was error because Gonzales failed to request and obtain findings from the jury on the essential elements of his only viable claim—a premises defect action. As a result, Saeco claims the general negligence question that was submitted to the jury is immaterial and not a controlling issue. Gonzales, however, counters that Saeco invited the trial court to err by requesting the general negligence instruction and broad-form negligence question that was ultimately submitted to the jury. Gonzales argues Saeco cannot complain because it waived any jury charge error complaints when the trial court submitted the question and definition of negligence that Saeco itself proposed. We agree with Gonzales.[1]

Generally, the invited error doctrine applies when a party requests a court to make a specific ruling and then complains about the ruling on appeal. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009); *see also Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex. 1993) ("Parties may not invite error by requesting an issue and then objecting to its submission."). A party cannot ask something of the trial court and then complain the trial court erred in granting the relief sought. *Berry v. Segall*, 315 S.W.3d 141, 144 (Tex. App.—El Paso 2010, no pet.) (citing *Ne. Tex. Motor Lines v. Hodges*, 138 Tex. 280, 158 S.W.2d 487, 488 (1942)).

---

[1] Because we believe Saeco invited the trial court to err, we do not address Saeco's argument that Gonzales's only viable claim for recovery is one for premises defect.

At the pre-trial hearing and the charge conference, Saeco argued that Ram, as the general contractor, was solely liable to Gonzales because Ram had a non-delegable duty to third parties and could not delegate its duty of care to its independent contractor, Saeco. Saeco based this argument on the theory that Ram contracted with the City to perform an inherently dangerous activity (excavating a hole). The trial court denied Saeco's motion for directed verdict on this theory; however, the trial court indicated Saeco could include an instruction regarding non-delegable duty in its proposed jury charge. Both parties were asked to submit their proposed charges at the beginning of the second week of trial.

Gonzales's proposed charge included only a damage question because he argued Saeco had judicially admitted its liability. Saeco's proposed charge included a general negligence instruction and a broad-form negligence question that submitted the liability of both Saeco and Ram. Saeco also proposed a proportionate responsibility question and an instruction on non-delegable duty. Ultimately, the charge submitted to the jury included the general negligence instruction and broad-form negligence question proposed by Saeco, as well as a question on proportionate liability and a question on damages. Gonzales did not object to the submission of the negligence instruction and question proposed by Saeco. The jury found Saeco 100% liable.

One week after the jury's verdict, Saeco's new counsel argued the wrong theory of liability was submitted to the jury and, as a result, Saeco was entitled to a JNOV. Saeco contended that Gonzales's only viable claim for recovery was premises defect and that the general negligence instruction and broad-form negligence question that was submitted to the jury was insufficient because Gonzales failed to request and obtain jury findings on the essential elements of a premises defect claim.

Our review of the record indicates the trial court relied on Saeco's proposed instructions and questions in preparing the court's charge. At the hearing on Saeco's motion for JNOV, the court initially stated, "You know, that's real interesting . . . because it was [Saeco's] proposed charge that I used in order to prepare the Charge of the Court. Are you saying that was abandoned because now you want to claim premises defect?" Later in the hearing, the court stated, "I used your client's charge. I used the Saeco charge . . . ." The trial court then stated, "Well, [I am] kind of surprised that . . . you're now claiming that it's a premises defect claim, because this is the first time I have heard that. First time." At the conclusion of the hearing, the trial court denied the motion.

Here, although Saeco argues in its post-judgment motions and on appeal that this is a premises defect case, it did not object to—but rather requested—the case be submitted to the jury as a general negligence case. As a result, even if the liability question in the charge was improper, we believe Saeco waived the applicability of premises defect on appeal because it invited the error in its proposed charge. *See Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex. 1993) (concluding that application of federal maritime law can be waived by failing to object to the application of state law in jury charge and that General Chemical invited error by not objecting to, and then requesting, "the very issues that it now seeks to avoid."). "It is 'elementary' that a party may not invite error by asking 'something of a court and then complain that the court committed error in giving it to him.'" *Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 101 (Tex. App.—Eastland 2006, pet. denied) (quoting *Hodges*, 138 Tex. 280, 158 S.W.2d at 488).

Additionally, not only did Saeco invite any error in the charge, it also failed to object to any such error. *See* TEX. R. CIV. P. 274 ("A party objecting to a charge must point out distinctly

the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."); *De La Lastra*, 852 S.W.2d at 920. Because Saeco (1) received the jury charge it asked for, (2) did not object at trial, and (3) now complains on appeal that the wrong theory of liability was submitted to the jury, we conclude Saeco invited the trial court to err and has waived its jury charge complaints on appeal.

## FACTUAL SUFFICIENCY

In the second issue on appeal, Saeco challenges the factual sufficiency of the evidence in support of the jury's award of Gonzales's future medical expenses. The jury awarded Gonzales $295,000 in future medical expenses.

We review a factual sufficiency challenge by weighing all of the evidence in support of the jury's finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We must determine if the evidence in support of the finding is so weak as to be clearly wrong, unjust, or against the great weight and preponderance of the evidence. *Id.* We must also determine if the finding is so against the great weight and preponderance of the evidence so as to be clearly wrong or manifestly unjust. *Id.*

In Texas, the "reasonable probability" rule is followed for damages for future medical expenses. *Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied). To recover future medical expenses, a plaintiff must show there is a "reasonable probability" that such expenses will be incurred in the future. *Id.* While the preferred practice is to establish future medical expenses through expert medical testimony, the rule does not require this. *Id.* Instead, a jury can make an award for future medical expenses based on the nature of the plaintiff's injuries, medical care rendered to a plaintiff before trial, and the condition of the

plaintiff at the time of trial. *Id.* Furthermore, a jury's award of future medical expenses lies mostly within the jury's discretion. *Id.* "Because issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of these damages." *Id.*

Here, the jury heard the testimony of several experts regarding Gonzales's future medical needs. First, the jury heard from Dr. Clifford Sarnacki, Gonzales's treating urologist. Dr. Sarnacki testified about Gonzales's continuing need for medications, therapy, counseling, and pain management over his lifetime. However, Saeco claims that Dr. Sarnacki's testimony was rendered factually insufficient when Sarnacki testified, "I don't know what he is going to need in the future, depending on how he presents in the future. It may require an entire different circumstance of surgical procedures, et cetera . . . . In surgery and medicine we don't project things. We do things at the time that we feel that are necessary. Whether it happens in the future, I can't predict the future." Importantly, however, Dr. Sarnacki never said Gonzales would not need *any* treatment in the future. We believe Dr. Sarnacki's statements were directed at his inability to exactly predict what future technology and treatment options would be available to Gonzales, and not to imply that Gonzales would not have future medical expenses.

Next, testimony regarding future medical expenses was provided by Dr. Christopher Ticknor, Gonzales's treating psychiatrist. Dr. Ticknor testified concerning Gonzales's diagnoses of PTSD, major depression, and chronic pain. He also explained the medications he had prescribed for Gonzales and how he anticipated Gonzales would take these for the rest of his life and the costs associated with this treatment. Further, Dr. Ticknor described the counseling Gonzales would need for treatment of PTSD, noting that people with this condition "don't get 100 percent well. They continue to require treatment in the future." Finally, Donna Johnson,

Gonzales's life care planner, testified about Gonzales's anticipated future medical expenses. Johnson calculated and explained to the jury the cost for medical treatment that Gonzales would need over his lifetime. She based this information on his injuries and the various medical examinations, recommended procedures, and physician evaluations Gonzales had already received.

Based on the foregoing, we conclude the evidence was factually sufficient to sustain the jury's verdict regarding Gonzales's future medical expenses. The evidence presented at trial as to these expenses is not so weak as to be clearly wrong, unjust, or against the great weight and preponderance of the evidence. *See Francis*, 46 S.W.3d at 242.

## CONCLUSION

We overrule Saeco's issues on appeal and affirm the decision of the trial court.

Sandee Bryan Marion, Justice