

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00043-CV

**JLG TRUCKING LLC**,
Appellant

v.

Lauren R. **GARZA**,
Appellee

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 7459
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: October 9, 2013

AFFIRMED

A jury awarded Lauren R. Garza $1,166,264.38 in damages for injuries she sustained as a result of an automobile accident which the jury found was caused by the negligence of an employee of JLG Trucking LLC. JLG does not challenge the jury's liability finding on appeal. JLG does challenge: (1) the trial court's exclusion of evidence of Garza's involvement in a second automobile accident; (2) the trial court's admission of certain expert testimony; and (3) the legal sufficiency of the evidence to support the jury's award of damages Garza will incur or sustain in the future. We affirm the trial court's judgment.

**EXCLUSION OF EVIDENCE OF SECOND ACCIDENT**

In its first three issues, JLG asserts the trial court erred in excluding evidence that Garza was in a second automobile accident three months after the accident involving JLG's employee. JLG contends the jury should have been allowed to consider this evidence in determining whether some or all of the injuries sustained by Garza were attributable to the second accident.

1.      *Standard of Review*

"The admission and exclusion of evidence is committed to the trial court's sound discretion."  *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).  A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

2.      *Necessity of Expert Testimony on Causation*

In *Guevara v. Ferrer*, 247 S.W.3d 662, 663 (Tex. 2007), the Texas Supreme Court addressed the issue of when expert testimony is required to support a finding of causation in a case involving an automobile accident.  The court concluded, "expert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons."  *Id*.  In that case, the court recognized that "basic conditions following ***an*** automobile collision can be within the common experience of lay jurors."  *Id*. at 668 (emphasis added).  Where a party's injuries could be linked to more than one cause, however, expert testimony is required to determine the proper causal link.  *See Guevara*, 247 S.W.3d at 669 (expert proof of conditions and causes necessary when independent causes could have caused patient's conditions); *State Office of Risk Mgmt. v. Adkins*, 347 S.W.3d 394, 401 (Tex. App.—Dallas 2011, no pet.) (expert testimony

was required to establish that twisting of neck at work aggravated pre-existing injury to neck caused by automobile accident); *Bowler v. Metropolitan Transit Auth. of Harris County*, No. 01-06-00553-CV, 2007 WL 1299803, at \*2 (Tex. App.—Houston [1st Dist.] May 3, 2007, no pet.) (citing cases holding that "expert medical testimony *is* required when the record identifies more than one cause of the plaintiff's injuries") (mem. op.); *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 241 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (expert testimony on causation required where medical condition could have several causes).

### 3. Analysis

In July of 2008, the 18-wheeler truck driven by JLG's employee rear-ended the pick-up truck driven by Garza. JLG sought to introduce evidence that Garza was in a second collision involving two automobiles in October of 2008. JLG offered the evidence to show that this second accident could be the cause of some or all of the injuries to Garza's neck.

During the trial court's hearing on Garza's motion to exclude the evidence of the second accident, the trial court was informed that Garza's treating physician would testify at trial that all of Garza's injuries were attributable to the first collision. The trial court was further informed that the radiologist that JLG had designated as an expert would testify that the MRI of Garza's neck showed only one possible herniation that was not caused by trauma but by degenerative disease. Therefore, no expert testimony was proffered to establish that the second collision caused any of Garza's injuries. Because expert testimony would be required to establish any such causal link between the second collision and Garza's injuries, the trial court did not abuse its discretion in excluding the evidence of the second collision.

### SUPPLEMENTATION OF DISCOVERY

In its fourth, fifth, and sixth issues, JLG asserts the trial court erred in admitting the testimony of Garza's treating physician, a vocational rehabilitation counselor, and an economist

because their deposition testimony was materially different from the disclosures that were previously made and the reports that were previously provided. Garza responds that the changes in the testimony were refinements, not material changes.

Pursuant to Rule 194.2(f), Garza disclosed the requisite information for her retained testifying experts. The disclosure stated that Richard Cortez, a certified public accountant and economist, would testify regarding Garza's loss of earning capacity, and Donna Johnson, a licensed professional rehabilitation counselor, would testify regarding Garza's life care plan, vocational rehabilitation, future work options, work disability rating, psychological issues, and causation. Garza's treating physician, Dr. Guillermo Pechero, also was properly disclosed as a testifying expert.

It appears JLG is arguing that Garza failed to timely amend or supplement these disclosures pursuant to Rule 193.5 of the Texas Rules of Civil Procedure. Rule 193.5 requires supplementation if a party's response "was incomplete or incorrect when made, or, although complete and correct when made, is no longer complete and correct." TEX. R. CIV. P. 193.5(a). JLG argues that Johnson's designation "did not contain any numbers or specific numerical level of disability assumed by the witness;" however, in her deposition that was taken less than 30 days before trial, Johnson "amended her opinion to state that [Garza] would be incapable of working a full time job" and "her work would be reduced 5 to 20 hours per week." With regard to Cortez, JLG argues Cortez's initial projection of loss of earning capacity was based on minimum wage earnings; however, Garza untimely produced a revised report from Cortez with projections based on an accountant's wages. Finally, JLG argues that Garza's discovery response did not disclose any

amount for future medical expenses; however, in his deposition which was taken one week before trial, Dr. Pechero testified about Garza's possible need for future surgery.[1]

With regard to Dr. Pechero, JLG provides no citations to support its contention that Garza was required to disclose future medical expenses in response to a request for a disclosure regarding the method of calculating economic damages. In addition, JLG provides no record citation to support its contention that Garza's disclosures did not contain this information. Accordingly, JLG's contention is inadequately briefed. *See* TEX. R. APP. P. 38.1(g), (i). Moreover, Garza's disclosures stated that Dr. Pechero would testify regarding Garza's treatment, prognosis, diagnosis, and causes of her injuries, and Garza's need for future surgery is part of her prognosis. Even assuming that Garza was required to disclose an amount for future medical expenses in her response, JLG cannot demonstrate that it was harmed by the admission of Dr. Pechero's testimony in this regard because, as discussed later in this opinion, the evidence is legally sufficient to support the jury's award of future medical expenses even absent his testimony. *See* TEX. R. APP. P. 44.1(a) (reversal not required unless error probably caused the rendition of an improper judgment); *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 620 (Tex. 1999) (erroneous admission of expert testimony harmless where other testimony established same fact).

With regard to the testimony of Johnson and Cortez, "[o]ur rules do not prevent experts from refining calculations and perfecting reports through the time of trial." *Exxon Corp. v. West*

---

[1] With regard to preservation of error, JLG contends that it filed two pretrial motions to exclude or limit the testimony it challenges. The problem with this contention is that JLG actually filed a motion to exclude, challenging the testimony of Cortez and Johnson under Rule 702 based on Dr. Pechero's testimony that Garza's surgery was successful. JLG then filed an ***amended*** motion to exclude, challenging Cortez's use of an accountant's salary in his damages model and Dr. Pechero's testimony regarding the need for a second surgery. In general, an amended motion completely supersedes and supplants the earlier-filed motion. *See Retzlaff v. Tex. Dept. of Crim. Justice*, 135 S.W.3d 737, 738 (Tex. App.—Houston [1st Dist.] 2003, no pet.); TEX. R. CIV. P. 64, 65. At the hearing on the motion to exclude, however, the trial court was aware of the substance of JLG's complaint; therefore, we will assume for purposes of this opinion that error was properly preserved.

*Tex. Gathering Co.*, 868 S.W.2d 299, 304 (Tex. 1993). Although Cortez recalculated Garza's future earning capacity based on information that she was steadily working toward completing her accounting degree, his methodology and the formula he used to make his calculations did not change. *See Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied) (expert's change to post-accident wages variable was a refinement in calculations or an expansion on already disclosed subject); *Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 51 (Tex. App.—Amarillo 2002, pet. denied) (trial court did not abuse its discretion in allowing expert to testify by applying different data appearing of record into old methodology or formulas to voice an alternate opinion). Similarly, Garza disclosed that Johnson would testify regarding future work options and work disability ratings. *See Norfolk Southern Ry. Co. v. Bailey*, 92 S.W.3d 577, 581 (Tex. App.—Austin 2002, no pet.) (noting expert may expand on already disclosed subject). Johnson's deposition testimony refined her opinion to add specific numbers. Neither Cortez nor Johnson made "the kinds of fundamental alterations that would constitute a surprise attack on the opposing side." *Lubbock County v. Strube*, 953 S.W.3d 847, 856 (Tex. App.—Austin 1997, pet. denied). Therefore, the trial court did not abuse its discretion in concluding that the rules did not prevent Cortez or Johnson from refining their testimony.

### SUFFICIENCY OF THE EVIDENCE

In its seventh through tenth issues, JLG challenges the legal sufficiency of the evidence to support the jury's award of future damages. JLG does not challenge the jury's award of past damages.

#### A.      *Standard of Review*

We review a legal sufficiency or "no evidence" challenge under the well-established principles set forth in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005). Reviewing the evidence in the light most favorable to the finding and indulging every inference that would

support it, we sustain a no-evidence challenge only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810, 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. at 819.

### B. Future Medical Expenses

"In Texas, the 'reasonable probability' rule is followed for damages for future medical expenses." *Saeco Elec. & Util., Ltd. v. Gonzales*, 392 S.W.3d 803, 808 (Tex. App.—San Antonio 2012, pet. granted, judgm't vacated w.r.m.). "To recover future medical expenses, a plaintiff must show there is a 'reasonable probability' that such expenses will be incurred in the future." *Id*. "While the preferred practice is to establish future medical expenses through expert medical testimony, the rule does not require this." *Id*. "Instead, a jury can make an award for future medical expenses based on the nature of the plaintiff's injuries, medical care rendered to a plaintiff before trial, and the condition of the plaintiff at the time of trial." *Id*. "Furthermore, a jury's award of future medical expenses lies mostly within the jury's discretion." *Id*. "'Because issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of these damages.'" *Id*.

In this case, Garza was twenty-two-years-old at the time of trial. Both she and Dr. Pechero testified regarding the nature of her neck injury, her efforts to recover with conservative care, and her ultimate decision to undergo the operation which left her with the permanent placement of metal plates in her neck. Garza underwent the surgery in January of 2012, and the case was tried in October of 2012. Although both Garza and Dr. Pechero considered the surgery a success and

Garza's conditions had improved, Garza testified that she was not in the same condition as she was before the accident. Garza stated that she still experienced pain and could not sit for long periods of time or the muscles in her neck become stiff. Garza further stated that Dr. Pechero had talked about surgery sometime in the future.[2] Johnson also testified that pain worsens as people age, and people with surgery tend to develop arthritis in the area where the surgery was performed. Johnson stated that this type of arthritis will be an issue for Garza in the future.

Based on the foregoing testimony, the jury could have determined that a reasonable medical probability exists that Garza will incur medical expenses in the future based on her neck injury, which could include an additional surgery. Accordingly, the evidence is legally sufficient to support the jury's award of future medical expenses.

### C. Future Physical Pain

"[E]vidence of continuing pain can support an award of future physical pain." *Gibbins v. Berlin*, 162 S.W.3d 335, 344 (Tex. App.—Fort Worth 2005, no pet.). As previously noted, Garza testified regarding her on-going pain and described the discomfort she experiences when she sits for prolonged periods of time. The jury also heard about the metal plates that were permanently placed in Garza's neck which Dr. Pechero acknowledged would affect her flexibility. This testimony is sufficient to support the jury's award for future physical pain.

### D. Future Physical Impairment

The jury charge defined "physical impairment" as the loss of Garza's former lifestyle. *See Pierre v. Swearingen*, 331 S.W.3d 150, 156 (Tex. App.—Dallas 2011, no pet.) (noting physical impairment includes limitations on physical activities and the inability to participate in physical activities engaged in before an accident). The charge further stated, "It can encompass both

---

[2] Although Dr. Pechero also testified that Garza could require an additional surgery in the future, we do not rely on his testimony in our analysis for the reasons previously stated in this opinion.

economic and non-economic losses, and can include hedonic damages, or loss of enjoyment of life." *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003) (noting loss of enjoyment of life may be compensated as physical impairment).

In this case, Garza testified that she could no longer ride roller coasters due to risk of additional injury. She also can no longer play tennis because the swinging motion and other required movements cause a stinging sensation that is very discomforting and painful. Garza also can no longer bowl, ride in a boat, or go hunting due to the risk of injury to her neck. Garza also can no longer go dancing or carry her niece and nephew because of their weight. Garza also expressed concern with her ability to carry her own children in the future. This testimony is sufficient to support the jury's damage award for future physical impairment.

JLG relies heavily on *Dollison v. Hayes*, 79 S.W.3d 246 (Tex. App.—Texarkana 2002, no pet.), to support its position that Dr. Pechero's testimony that Garza's surgery was a success precluded the jury from awarding damages to Garza for future physical impairment. In that case, however, the appellate court was reviewing the sufficiency of the evidence to support the jury's award of zero damages for physical impairment. *Id.* at 248. Moreover, the plaintiff was released to work after approximately two months of physical therapy and had never seen the orthopedic surgeon since his release. *Id*. The opinion does not refer to any testimony by the plaintiff regarding the effect of the injury on his life activities; instead, the plaintiff argued the jury was required to award some damages for physical impairment since it awarded him damages for lost wages. *Id*. Accordingly, *Dollison* is clearly distinguishable from the instant case in which Garza had metal plates permanently implanted in her neck and testified regarding the life activities in which she could no longer engage.

*E.      Future Loss of Earning Capacity*

JLG contends the evidence is insufficient to support the award of future loss of earning capacity because Dr. Pechero testified that Garza's surgery was successful and did not testify that she was unable to work. This argument ignores the testimony of Garza's two retained experts. Johnson, a licensed vocational rehabilitation counselor with forty-two years of experience, testified regarding the limitations on Garza's ability to work in the future based on her injuries. Although Johnson testified that Dr. Pechero's opinion regarding Garza's future ability to work would have been helpful in her analysis, she stated that she could reach her opinion even in the absence of that testimony. Furthermore, Cortez provided the jury with a mathematical formula to apply in calculating Garza's future loss of earning capacity. This testimony is sufficient to support the jury's damage award for loss of future earning capacity.

**RULE 702**

In its final issue on appeal, JLG contends the trial court erred in allowing Cortez and Johnson to testify regarding Garza's loss of earning capacity because Dr. Pechero testified that Garza's surgery was a success. As previously noted, however, Johnson's qualifications enabled her to testify regarding the manner in which Garza's injuries will limit her in working in the future independent of Dr. Pechero's testimony. JLG appears to interpret Dr. Pechero's testimony as evidence that Garza has been returned to her pre-accident physical condition. Garza's testimony, however, clearly allowed the jury to find to the contrary.

JLG also contends that because Garza had only held minimum wage jobs before her injuries, her loss of future earning capacity had to be based on minimum wage. This misconstrues the concept of future earning capacity. "Lost earning capacity is not measured by what a person actually earned before an injury but by what the person's capacity to earn a livelihood actually was even if he or she had never worked at that capacity in the past." *General Motors Corp. v. Burry*,

203 S.W.3d 514, 553 (Tex. App.—Fort Worth 2006, pet. denied). "In order to recover diminished earning capacity in a particular occupation, it is not always necessary for the plaintiff to have been working in and deriving earnings from that occupation before injury, as long as earnings from that occupation would provide a true measure of that plaintiff's earning capacity." *Id.*

In this case, Garza was pursuing a degree in accounting when she was injured, and Johnson testified regarding the likelihood that Garza would complete her degree given her self-motivation. Garza also testified about her intentions to complete her degree. This evidence supported Cortez's use of an accountant's salary in calculating Garza's loss of future earning capacity.

CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice