**Reversed and Rendered and Opinion filed July 3, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00378-CV

---

## W&T OFFSHORE INC., Appellant

## V.

## LUKE MEYERS, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2012-74366**

---

### O P I N I O N

Luke Meyers was working on an oil and gas platform off the coast of Louisiana when a crane cable broke and caused a part of the crane to fall on his foot, resulting in personal injury. Meyers sued the owner of the platform, W&T Offshore Inc., alleging among other things that W&T failed to warn Meyers of hidden danger aboard the platform, failed to maintain a safe work environment, and failed to inspect, maintain, and repair equipment. At trial, the parties' experts agreed that the cable was defective.

The jury charge submitted a general-negligence question rather than a premises-liability question, and the jury found W&T negligent. W&T moved for a judgment notwithstanding the verdict because Meyers failed to obtain a jury finding on an essential element of a premises-liability claim. The trial court denied the motion, and W&T appeals.

We hold that the trial court erred by denying the motion for JNOV because Meyers failed to secure a necessary jury finding on his proper theory of recovery: premises liability. We reverse the trial court's judgment and render a judgment that Meyers takes nothing.

## I.     Texas Procedural Law and Rule 279

The parties agree that Texas procedural law applies in this case. Rule 278 of the Texas Rules of Civil Procedure requires the trial court to submit to the jury questions, instructions, and definitions that are "raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. Rule 279 provides, "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279. If, however, elements are omitted from the charge that constitute only part of a complete and independent ground, and if other elements necessarily referable to that ground are submitted and answered, then the omitted elements may be deemed found in support of the judgment. *See Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990) (citing Tex. R. Civ. P. 279).

Under the rules, if the pleadings and evidence indicate that the plaintiff submitted to the jury an improper theory of recovery (e.g., general negligence) in lieu of the plaintiff's proper theory of recovery (e.g., premises liability), then the plaintiff waives the unsubmitted theory of recovery. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 469–70, 481 (Tex. 2017). If the plaintiff has waived their

2

theory of recovery by failing to request or secure findings on the theory, then a reviewing court will render a take-nothing judgment. *See id.* at 483.

## II.    No Invited Error

As an initial matter, Meyers contends that W&T invited the error and is therefore prohibited from complaining about Meyers's failure to secure a premises-liability finding. We hold that W&T did not invite this error.

The invited error doctrine prevents a party from complaining on appeal that the trial court took a specific action that the complaining party requested. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005). The doctrine is a form of estoppel. *See Patton v. Dallas Gas Co.*, 192 S.W. 1060, 1062 (Tex. 1917); *Heidelberg v. State*, 36 S.W.3d 668, 671 (Tex. App.—Houston [14th Dist.] 2001, no pet.). As relevant here, a defendant may be estopped from complaining that the plaintiff failed to secure a jury finding on the proper theory of recovery (e.g., premises liability) if the defendant "persuades a trial court to adopt a jury charge that [the defendant] later alleges supports an improper theory of recovery" (e.g., general negligence). *United Scaffolding*, 537 S.W.3d at 482 (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010)); *see also Saeco Elec. & Util., Ltd. v. Gonzales*, 392 S.W.3d 803, 807–08 (Tex. App.—San Antonio 2012, pet. granted, judgm't vacated w.r.m.) (holding that the defendant invited this type of error by submitting a proposed charge based on general negligence; the defendant "received the jury charge it asked for").

Meyers contends that W&T invited error by attaching a document titled "Plaintiff's Proposed Jury Charge" to W&T's response to the trial court's Rule 166 trial preparation order. Rule 166 of the Texas Rules of Civil Procedure authorizes a trial court to direct the parties to appear before the court and consider any matter as may aid in the disposition of the action, including but not limited to, "[p]roposed

jury charge questions, instructions, and definitions for a jury case." Tex. R. Civ. P. 166. A trial court's authority "to require the parties to 'appear before it'" in Rule 166 includes the express power to order an appearance by filing a written report. *Koslow's v. Mackie*, 796 S.W.2d 700, 703 (Tex. 1990). Rule 166 states further that the trial court "shall make an order that recites the action taken at the pretrial conference," and that "limits the issues for trial to those not disposed of by admissions, agreements of counsel, or rulings of the court." Tex. R. Civ. P. 166.

In this case, the trial court signed a pre-trial "Trial Preparation Order" that instructed the parties as follows: "Pursuant to Rule 166 of the Texas Rules of Civil Procedure, the items that are checked below must be FILED BEFORE OR by 02-06-2015." The trial court checked a box next to the following items, among others: (1) "Draft Jury Charge (if a jury fee has been paid) or Findings of Fact and Conclusions of Law. Modifications may be submitted as the trial progresses."; (2) "Exhibits. An exhibit list is required. . . ."; and (3) "Motions in Limine." W&T filed "Defendant's Trial Preparation Order." Under the heading "jury issues," W&T attached "Plaintiff's Proposed Jury Charge." The proposed charge included a general-negligence question and related definitions. The charge did not include a premises-liability question or related definitions.

On the two days immediately before trial, the court held pretrial hearings primarily to address issues related to exhibits and motions in limine. The only time the parties or court referred to the jury charge was in the context of the exhibits and motions in limine. Nothing at the pretrial hearing indicated that the court was making a ruling concerning the jury charge. In discussing the topic of a type of damages, for example, the Court said, "The evidence is coming in[. H]ow it's delineated on a Jury Charge we will decide at that time—at the time we discuss the Jury Charge . . . ."

4

The record does not contain a subsequent order reciting the action taken at the pretrial conference pursuant to Rule 166.

Six days into the trial, at the charge conference, the court provided the parties with a copy of the court's charge. W&T objected for various reasons, contending that "[s]ubmission of negligence as to W&T is improper." W&T stated: "Based on the Louisiana Law and Federal Law applying the Louisiana Law in an OCSL case, our position is that there is no evidence that W&T controlled the work of Mr. Meyers or presented him with an unreasonable and dangerous—unreasonably dangerous condition in which to work." W&T did not explicitly tell the trial court that the case should have been submitted on a general-negligence theory or a premises-liability theory, and W&T did not have a duty to do so. *See United Scaffolding*, 537 S.W.3d at 481.

On appeal, the only case Meyers cites in which an appellate court held that the defendant invited this type of error is *Saeco Electric & Utility, Ltd. v. Gonzales*, 392 S.W.3d 803 (Tex. App.—San Antonio 2012, pet. granted, judgm't vacated w.r.m.). But, the record in *Saeco* was markedly different for three reasons. First, in *Saeco* the trial court asked for proposed charges at the beginning of the second week of trial. *Id.* at 807. Here, the trial court asked for proposed charges through a pretrial order and told the parties that modifications could be submitted as the trial progressed. Second, in *Saeco* the defendant did not object to the submission of the general-negligence question. *See id.* Here, W&T objected to the submission of the general-negligence question. Third, in *Saeco* the trial court specifically told the parties that it was using the defendant's proposed charge. *See id.* Here, nothing in the record indicates that the trial court based its charge on W&T's pretrial submission, rather than some other source. The court did not say on the record that it was using W&T's charge, nor did the court memorialize a Rule 166 ruling, as

required by the rule, to recite the actions taken at the pretrial conference on the issue of the proposed jury charges (i.e., none).[1]

Under these circumstances, the record does not show that W&T "persuade[d] a trial court to adopt a jury charge that [W&T] later alleges supports an improper theory of recovery" (e.g., general negligence). *See United Scaffolding*, 537 S.W.3d at 482. W&T is not estopped under the doctrine of invited error from contending that Meyers failed to secure a jury finding on his proper theory of recovery. *Cf. id.* (holding that the defendant's proposing a general-negligence charge in the first trial did not persuade the trial court to submit a general-negligence charge in the second trial).

## III.    Louisiana Substantive Law as Surrogate Federal Law

The parties agree that Meyers's injury occurred on an oil and gas platform located off the coast of Louisiana. Meyers contends that this court must, therefore, apply Louisiana substantive law under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(a), to determine whether the jury charge contained at least one element of a premises-liability theory, so as to allow for deemed findings under Rule 279. W&T makes several arguments for why we should apply Texas substantive law or presume that Louisiana law is identical to Texas law. We do not address those arguments in detail because resolution of whether Louisiana law

---

[1] We note that Meyers is flatly wrong when he contends in his brief that "[t]he only difference" between W&T's pretrial proposed charge and the charge ultimately submitted to the jury is that the charge places definitions of "Negligence," "Ordinary Care," and "Proximate Cause" in different places—in the general instructions versus within Question No. 1 (the negligence question). Although many differences seem minor, the charges are replete with them, thus indicating that the trial court did not simply rubber-stamp and "use the [W&T] charge." *See Saeco*, 392 S.W.3d at 807 (noting the trial court's statements that "it was [Saeco's] proposed charge that I used" and "I used your client's charge. I used the Saeco charge." (alteration in original)). Rather, the trial court crafted a charge that appeared similar to, though distinct from, W&T's proposed charge.

applies is not necessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1. We assume without deciding that OCSLA mandates the application of Louisiana substantive law as surrogate federal law in this case. *See, e.g.*, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480–81, 482 n.8 (1981) ("OCSLA does supersede the normal choice-of-law rules that the forum would apply.").

## IV. Premises Liability and General Negligence Are Distinct Theories of Liability Under Louisiana Law

At the heart of this case is whether Meyers obtained a jury finding on his premises-liability theory of recovery when the jury question included only a general-negligence (i.e., negligent activity) question.[2] In Texas, although premises-liability is a species or "branch" of negligence law, these two claims are "separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding*, 537 S.W.3d at 471. Thus, a jury finding on general negligence does not allow for deemed findings on a premises-liability claim pursuant to Rule 279 of the Texas Rules of Civil Procedure. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997).

We must answer the following question: Does Louisiana law distinguish between negligent activity and premises liability, such that a jury finding on a general-negligence question will not support a judgment in a case that should have been tried under a premises-liability theory? W&T cites no Louisiana case directly on point. But W&T contends that Louisiana, like Texas, recognizes that negligent-activity and premises-liability theories of recovery are distinct. We agree with W&T.

---

[2] Meyers refers to his theory of recovery as a "failure to maintain equipment." We recite in greater detail below why his claim incorporates a premises-liability theory of recovery rather than a general-negligence theory.

Louisiana's delictual laws are the "equivalent of the common law tort concept." *Myers v. Dronet*, 801 So. 2d 1097, 1102 (La. Ct. App. 2001). Under the Louisiana Civil Code, a delictual action begins with Article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." *Id.* at 1103 (alteration omitted) (quoting La. Civ. Code art. 2315(A)); *see also Loescher v. Parr*, 324 So. 2d 441, 445 (La. 1975) ("Articles 2315 through 2324 of the Louisiana Civil Code comprise the code's entire chapter of legal principle regulating offenses and quasi-offenses."), *superseded by* 1996 La. Sess. Law Serv. 1st Ex. Sess. Act 1, § 1 (West). The remaining articles are "amplifications as to what constitutes 'fault' and under what circumstances a defendant may be held liable for his act or that of a person or thing for which he is responsible." *Loescher*, 324 So. 2d at 445; *see also Myers*, 801 So. 2d at 1103 ("The articles which follow Article 2315 chisel its general tenet into various forms, such as negligence, strict liability, or absolute liability.").

Article 2316 supplies the general concept of negligence: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." *Myers*, 801 So. 2d 1103–04 (alteration omitted) (quoting La. Civ. Code art. 2316). The elements of negligence in Louisiana are, generally: (1) the defendant owed the plaintiff a duty under the specific circumstances of the particular case; (2) the defendant breached the duty which he or she owed the plaintiff; (3) the delictual conduct was the cause-in-fact of the damage or injury; (4) the risk and resulting harm stood within the scope of protection of the defendant's duty; and (5) the plaintiff showed actual damage. *See id.* at 1104; *see also Thibodeaux v. Trahan*, 74 So. 3d 850, 853 (La. Ct. App. 2011).

Before tort reform in 1996, several of the subsequent articles recognized strict liability for premises defects. For example, under Article 2317, courts recognized

strict liability for those who had custody of "things." *See Myers*, 801 So. 2d at 1104–05. Article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." La. Civ. Code art. 2317. Similarly, courts recognized strict liability of owners of buildings for damage caused by a defect or "ruin" of the building. *See Loescher*, 324 So. 2d at 446; *see also Faciane v. Golden Key Div. Ltd. P'ship*, No. 2017-CA-636, 2018 WL 2327720, at *3 nn.5–6 (La. Ct. App. May 23, 2018). But the Louisiana Legislature enacted Article 2317.1 and amended Article 2322 to replace strict liability with a negligence-based standard. *See Faciane*, 2018 WL 2327720, at *3 nn.5–6; *see also Myers*, 801 So. 2d at 1104.

Article 2322 "specifically modifies liability under Article 2317 with respect to the owner of a ruinous building or a defective component part of that building." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 182 (La. 2013). Article 2322 provides in relevant part:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2322.

For a plaintiff to hold the owner of a building liable for the damages caused by the building's ruin or a defective component under Article 2322, the plaintiff must prove: (1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the ruin or defect

9

created an unreasonable risk of harm;[3] (4) the damage could have been prevented by the exercise of reasonable care; (5) the defendant failed to exercise such reasonable care; and (6) causation. *See Broussard*, 113 So. 3d at 182–83.

Article 2322 is applicable to fixed offshore drilling platforms, including appurtenances such as cranes. *See Moczygemba v. Danos & Curole Marine Contractors, Inc.*, 561 F.2d 1149, 1151–52 (5th Cir. 1977) (Article 2322 applicable to crane on offshore drilling platform); *see also Olsen v. Shell Oil Co.*, 365 So. 2d 1285, 1289–91 (La. 1978) (approving *Moczygemba* and the application of Article 2322 to appurtenances, and noting that a building may be uninhabited). Thus, Article 2322 provides the standard in this case involving a defective crane on an uninhabited offshore drilling platform. *See Moczygemba*, 561 F.2d at 1151–52.[4]

Although the premises-liability articles are now "negligence-based," *see Myers*, 801 So. 2d at 1104, some courts have indicated that the "general negligence" articles provide for recovery based on injury from a premises defect. For example, Meyers relies on the Fifth Circuit opinion in *Ukudi v. McMoran Oil & Gas L.L.C.*, in which the plaintiff alleged that the defendant was liable for failing to discover and repair unreasonably dangerous conditions on an offshore drilling platform owned by the defendant. *See* 587 F. App'x 119, 120–21 (5th Cir. 2014) (per curiam). The court

---

[3] Although not required expressly by the statute, Louisiana courts have required proof of this element—unreasonable risk of harm—under both negligence and strict-liability versions of the statute. *See Broussard*, 113 So. 3d at 183 (citing *Entrevia v. Hood*, 427 So. 2d 1146, 1148–49 (La. 1983)).

[4] But even if Article 2322 were inapplicable, resort would be to Article 2317. *See Olsen*, 365 So. 2d at 1290 (stating that even if an offshore drilling platform were not a building within the meaning of Article 2322, liability could be shown under Article 2317 for "things"). Under the related Article 2317.1, a plaintiff must prove: (1) the property which caused the damage was in the custody of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *Graupmann v. Nunamaker Family Ltd. P'ship*, 136 So. 3d 863, 867 (La. Ct. App. 2013).

indicated that the Louisiana Civil Code offered "three possible bases for this claim: Articles 2315 and 2316, Louisiana's general negligence provisions; Article 2317, which imposes liability for injuries caused by items in the defendant's custody; and Article 2322, which imposes liability for injuries caused by the ruin of the defendant's building." *Id.* at 121–22.

*Ukudi* does not stand for the proposition, however, that a jury charge under a negligent-activity theory adequately submits a premises-liability claim. *Ukudi* recognizes that under any of the statutory "bases" listed, a plaintiff still must prove that "the defendant knew or should have known of the condition that caused the harm." *Id.* at 122. Indeed, the plaintiff alleged three types of claims: a premises liability theory; a theory based on active negligence of the defendant's contractors; and the defendant's own negligence for failing to implement safety policies. *See id.* at 121. The Fifth Circuit analyzed the latter two claims separately from the premises liability claim, noting that the plaintiff would have to show the familiar elements of duty, breach, causation, and damages regarding a negligence claim. *See id.* at 123.

*Ukudi* indicates that the "general negligence" articles provide for a claim because, before the 1996 tort reform, a plaintiff in Louisiana could sue for a premises defect under two distinct theories: negligence or strict liability. *See Buffinet v. Plaquemines Parish Comm'n Council*, 645 So. 2d 631, 635 (La. Ct. App. 1994). Negligence required an extra element of proof—scienter, or the "knew or should have known" element. *See id.* at 635–36; *Silliker v. St. Landry Parish Police Jury*, 520 So. 2d 880, 885 (La. Ct. App. 1987). Since tort reform, however, the elements under a "negligence" theory and "custodial liability" theory are identical. *See Cheramie v. Port Fourchon Marina, Inc.*, 211 So. 3d 1212, 1215 (La. Ct. App. 2017); *Graupmann*, 136 So. 3d at 867.

11

Several Louisiana cases support the notion that negligent-activity and premises-liability claims are separate and distinct, such that a jury charge submitting one theory does not submit the other. For example, in *Kelly-Williams v. AT&T Mobility, LLC*, the court of appeals upheld the trial court's refusal to submit a general-negligence jury interrogatory in a case where a sign fell and struck the plaintiff inside an AT&T store. *See* 90 So. 3d 1071, 1077 (La. Ct. App. 2012). The jury charge included only interrogatories under the Louisiana Merchant Liability Act, which requires a plaintiff in a slip-and-fall case to prove, in addition to the usual requirements for negligence, several premises-liability issues: (1) the condition presented an unreasonable risk of harm to the claimant, and the risk of harm was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the condition; and (3) the merchant failed to exercise reasonable care. *See id.* at 1074–75 (citing La. Stat. § 2800.6(B)).[5]

The plaintiff in *Kelly-Williams* argued that "the trial court erred by failing to include on the verdict form a jury interrogatory on the law of general negligence, as opposed to language from the [statute]." *Id.* at 1074. The plaintiff argued that "general negligence rules should have been included on the jury form, so that the jury potentially could have found AT&T liable under either general negligence law, the Louisiana Merchant Liability law, or both." *Id.* at 1075. The court noted that the plaintiff objected "to her case becoming exclusively a premises liability case due to the limited scope of the verdict form." *Id.*

The court in *Kelly-Williams* held that the trial court did not err by omitting general negligence interrogatories. *Id.* at 1076. The court noted that when a "trip and fall accident is allegedly the result of a specific act of an employee and not solely

---

[5] Nothing in the statute affects any liability that a merchant may have under Articles 2317 or 2322. *See* La. Stat. § 2800.6(D).

12

the result of a condition found on the premises, the principles of negligence are applicable." *Id.* at 1075 (quoting *Frelow v. St. Paul Fire & Marine Ins. Co.*, 631 So. 2d 632, 635 (La. Ct. App. 1994)); *see also Chester v. Wal-Mart Stores, Inc.*, Civ. A. No. 91-1554, 1994 WL 532634, at *1 (E.D. La. Sept. 27, 1994) ("When the accident is solely the result of a condition found on the premises, general negligence principles do not apply and courts must apply [the Merchant Liability Act]."). The court distinguished this case from one involving active negligence, in which an employee was using a vacuum cleaner, and the plaintiff tripped on the cord. *See id.* (citing *Crooks v. Nat'l Union fire Ins. Co.*, 620 So. 2d 421 (La. Ct. App. 1993)). In *Kelly-Williams*, there was no evidence of "any analogous action on the part of AT&T employees [that] caused the sign to fall." *Id.* The court held, "In the absence of any evidence suggesting negligence on the part of any employee, it cannot be said that the trial court erred in failing to include general negligence in the jury form." *Id.* at 1076.

In the *Crooks* case, there was evidence that the plaintiff was injured due to a Wal-Mart employee's active negligence while vacuuming. *See Crooks*, 620 So. 2d at 423. The trial court included negligence and Merchant Liability Act instructions in the charge, but the court omitted a general-negligence interrogatory related to Wal-Mart's employee. *See id.* at 424–25. The court of appeals "agree[d] with the plaintiff's argument that the jury was prevented from considering the actions or conduct of the Wal-Mart employee" and that the trial court "should have included an interrogatory to the jury as to the applicability of the conduct of the store employee under general negligence principles." *Id.*[6]

---

[6] The *Crooks* court held that this error misled the jury, so the court conducted a de novo review of the record and rendered a judgment for the plaintiff on a general-negligence claim. *See* 620 So. 2d at 425, 430. In Louisiana, when reviewing a judgment rendered pursuant to a jury verdict under erroneous jury instructions, an appellate court's "review tends to involve trial de

13

Although *Kelly-Williams* and *Crooks* dealt with a different premises-liability statute than the one we are confronted with in this case, the decisions are sufficiently analogous to show that Louisiana courts indeed recognize a distinction between "general negligence" (i.e., negligent activity) and premises liability. Under Louisiana law, negligence and premises-liability claims require plaintiffs prove different, albeit similar, elements. *Compare Thibodeaux*, 74 So. 3d at 853 (elements of negligence), *with Broussard*, 113 So. 3d at 182–83 (elements of premises liability under Article 2322), *and Graupmann*, 136 So. 3d at 867 (elements of premises liability under Article 2317.1).

Accordingly, we hold that general negligence and premises liability are different theories of recovery under Louisiana substantive law for purposes of Rule 279. Under the rule, W&T is entitled to a take-nothing judgment if the proper theory

novo for all practical purposes" whereby the appellate court is "in effect, a court of original jurisdiction," free to make its own factual determinations. *Higgins v. Johnson*, 349 So. 2d 918, 925 (La. Ct. App. 1977); *see Gonzales v. Xerox Corp.*, 320 So. 2d 163, 164–65 & n.1 (La. 1975); *see also* La. Code Civ. Proc. art. 2164 & cmt. a (noting that the purpose of this article requiring appellate courts to render "any judgment which is just, legal, and proper upon the record" is to "give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below"). *See generally* Leon D. Hubert, Jr., *The Theory of a Case in Louisiana*, 24 Tul. L. Rev. 66, 75 (1949) (noting that "the theory of a plaintiff as to the nature of his case does not prevent him from shifting his theory[,] and his failure to make a required change in theory will not prevent the court from deciding the case on the proper theory"; discussing the "change of theory on appeal" where a plaintiff "has tried and argued the case below on theory *A* and on appeal for the first time presents theory *B*, on the same facts," and noting that an appellate court could remand for further evidence, which "would be superior to [a system] in which the court admits that a plaintiff should win on the established facts if theory *B* is applied to them, but refuses to apply theory *B* because it was not argued below").

Meyers does not contend that these principles should apply to a Texas appellate court in a case applying Louisiana law as surrogate federal law under OCSLA. Since Meyers agrees that this court should apply Rule 279 of the Texas Rules of Civil Procedure in this case, we follow the Texas Supreme Court's interpretation of Rule 279. *See, e.g.*, *Rice v. Rice*, 533 S.W.3d 58, 62 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Under principles of vertical stare decisis, Texas intermediate appellate courts and trial courts are bound by the decisions of the Texas Supreme Court.").

of recovery is premises liability because the jury charge in this case did not submit a premises-liability question. *See United Scaffolding*, 537 S.W.3d at 469–70. We must now determine the proper theory of recovery.

## V.      Premises Liability Is the Proper Theory of Recovery

To determine a plaintiff's proper theory of recovery under Rule 279, courts look to the source of the plaintiff's injury, the pleadings and allegations, and the evidence presented at trial. *See id.* at 479. Meyers was injured when a defective crane cable snapped and caused part of the crane to fall on his foot. Both parties' experts agreed the cable was defective. Meyers pleaded that W&T failed to warn Meyers of hidden danger aboard the platform, failed to maintain a safe work environment, and failed to inspect, maintain, and repair equipment. There was no allegation or evidence presented at trial that any W&T employee or representative was engaged in any activity at or around the time of the injury to cause the cable to break. Meyers's theory of liability was based on W&T's failure to replace the cable after Meyers had told W&T six months earlier that the cable needed to be replaced. In sum, Meyers alleged and proved that W&T owned the platform and failed to remedy a known defective condition.

This case presents a clear example of a premises-liability theory. *See Kelly-Williams*, 90 So. 3d at 1074–76 (no error to submit only premises-liability interrogatories when a falling object struck a child); *see also Moczygemba*, 561 F.2d at 1151–52 (assuming error when the trial court failed to instruct the jury under Article 2322 in a case involving the fall of a crane from an offshore drilling platform).

Accordingly, Meyers's failure to request or secure findings to support his premises-liability claim cannot support a recovery in this case. *See United*

*Scaffolding*, 537 S.W.3d at 483. The trial court erred by denying W&T's motion for JNOV.

W&T's first issue is sustained.

## CONCLUSION

Having sustained W&T's dispositive issue, we reverse the trial court's judgment and render a judgment that Meyers takes nothing.


/s/    Ken Wise
        Justice


Panel consists of Justices Christopher, Brown, and Wise.